SHEPARD v. McDONALD.

4-3181

Opinion delivered April 9, 1934.

*Lee Miles* and *Trieber & Lasley,* for petitioner.

*Owens & Ehrman, Hal L. Norwood,* Attorney General, and *Robert F. Smith,* Assistant, for respondent and interveners.

*Rose, Hemingway, Cantrell & Loughborough, amici curiae.*

JOHNSON, C. J. This proceeding is a continuation of the case of *Shepard* v. *McDonald,* 188 Ark. 124, wherein we said: "It has been specifically agreed between counsel for petitioner and respondent that the question of the sufficiency of the ballot title in the instant case be reserved for decision until the jurisdictional questions have been determined. Therefore we do not here decide or discuss the sufficiency of the ballot title, etc."

The question thus expressly reserved for future determination is here presented, and we now proceed to its determination.

The ballot title submitted with the referendum petition is as follows:

"The purpose of this act is to abolish the State Board of Education elected by the people; to create a new State Board of Education appointed by the Governor; to create the office of State Superintendent of Public Instruction; and to repeal certain sections of the 'school law' which fix a regular time of meeting for the State Board of Education and requires said board to serve without remuneration."

In *Westbrook* v. *McDonald,* 184 Ark. 740, 44 S. W. (2d) 231, in reference to the sufficiency of a ballot title submitted with a petition to refer, we stated the rule as follows: "The ballot title should be complete enough to convey an intelligible idea of the scope and import of the proposed law, and it ought to be free from any misleading tendency, whether of amplification, of omission, or of fallacy, and it must contain no partisan coloring."

The rule thus stated is broad enough to be all inclusive and flexible enough to afford ample relief in all meritorious cases, therefore we reaffirm it without citing or discussing authorities from other jurisdictions.

The only question here presented is, does the ballot title under consideration fall within or without the rule stated?

The first phrase of the submitted ballot title contains the following: "elected by the people." The only purpose for the use of these words was to lend partisan color to the position assumed by the petitioners. It was and is wholly immaterial whether or not the abolished board was elective or appointive. The Legislature has plenary power to create and abolish such boards and commissions.

The second phrase of the submitted title is likewise partisan and colored. The undue emphasis placed upon "appointed by the Governor" does not add to or detract from the merits or demerits of the act.

Not only is this phrase colored and partisan, but it is misleading and contains a half truth only. The act provides that the new State Board of Education shall be appointed by the Governor with the advice and consent of the Senate. Thus it appears that the elective Senate of the State is a part and parcel of the appointive power, but this is skillfully withheld by the proponents of the referendum petitions.

The third phrase of the submitted title is likewise partisan, colored and misleading. It provides, "to create the office of State Superintendent of Public Instruction." This language is partisan and colored because it withholds from the voters the fact that the superintendent is to be elected by vote of the people, and this, in the face of the fact that undue emphasis has just been placed upon the facts that the "abolished board is elected by the people," and that the new board is "appointed by the Governor." If it were important to advise the voters that the old board was elected by the people, and that the new board would be appointed by the Governor, certainly it was equally important to advise the voters that the superintendent would be elected by the people.

The third phrase of the submitted title is misleading because it creates the impression that a new office, that of superintendent of public instruction, is being created. This office has been in existence for the past fifty years,

although for the past few years operating under the appellation of Commissioner of Education. The effect of the language employed in the act is to substitute the office of Superintendent of Public Instruction for that of Commissioner of Education under existing law, and this should have been reflected in the title instead of the converse, as was done.

The fourth and last phrase of the submitted ballot title as follows: "And to repeal certain sections of 'the school law' which fix a regular time of meeting for the State Board of Education and requires said board to serve without remuneration" is likewise misleading, partisan and colored. It is misleading because the fact is the members of the abolished State Board of Education do receive actual expenses while attending meetings of the State Board of Education. It is partisan and colored because it is immaterial whether or not such members are compensated. The inference sought to be conveyed by the use of the language thus employed is that the new State Board of Education to be appointed by the Governor will receive compensation when such is not the fact. If the language thus employed in the title is of importance to the voters, it was of equal importance that they be directly advised that the new State Board of Education to be appointed by the Governor would likewise be required to serve without remuneration.

Thus it appears that each sentence and phrase of the proposed title is either misleading, colored or partisan, and that each and all falls squarely within the prohibition announced in the Westbrook case, cited *supra*.

It is argued that the language contained in the proposed title is true, therefore cannot be considered as misleading, colored or partisan. The willful withholding of a material fact is equally as reprehensible as the misstatement of a material fact. This was fully recognized in the Westbrook case just referred to. There we had under consideration a proposed ballot title as follows: "To permit the granting of decrees of divorces to applicants who have resided in the State for a period of only three months." Each word, phrase and sentence of this

proposed ballot title was literally true, yet we held it misleading because it did not directly advise the voters that it would be necessary for applicants for divorces to establish by evidence a legal cause for divorce in addition to the required three months' residence. Thus it definitely appears that this contention was decided and determined adversely to respondent's contention here.

Our conclusion is therefore, that the submitted ballot title in the instant case falls within the prohibition of the Westbrook case and is insufficient.

After the filing of this suit, one W. E. Greene *et al.* were permitted to intervene upon the theory that they were offering as a part and parcel of the petition for referendum a supplemental and substituted ballot title. Prior to the submission of this cause, however, interveners requested permission to withdraw said intervention. We have concluded that interveners have the right to withdraw said intervention and substituted or supplemental ballot title. Therefore this question passes out of the case.

It follows from what we have said that the respondent, McDonald, Secretary of State, should have denied the petition for referendum, because of the insufficiency of the ballot title submitted therewith, and his actions in submitting and referring same is quashed, and a peremptory writ of prohibition is awarded in behalf of petitioners.

Justices SMITH, MEHAFFY and McHANEY dissent.

SMITH, J., (dissenting). If the majority opinion in the case of *Westbrook* v. *McDonald,* 184 Ark. 740, 44 S. W. (2d) 231, was critical in construing the requirements of the Initiative and Referendum Amendment in the matter of the sufficiency of the ballot title, as was said of it in the dissenting opinion in that case, then the majority opinion in the instant case is hypercritical in the same respect. If only those ballot titles may. be approved which are above and immune from criticism, the amendment has lost its value in both initiative and referendum features, as ballot titles must be submitted in either case. It is beyond contemplation or comprehension that the

ballot title should advise the voter fully what the exact state of the law will be if the majority vote is cast for the legislation, which is called "the measure" in the amendment. If such a test is to be applied, it would be equally important to advise the elector what the state of the law will be if the majority vote is not cast for the proposed measure.

Act 78 of the Acts of 1933, hereinafter referred to as act 78, here sought to be referred, amends, in several particulars, act 169 of the Acts of 1931, hereinafter referred to as act 169. Suppose it had been attempted to refer this act 169? How could a ballot title ever be prepared which could meet the tests to which the majority have here subjected the ballot title relating to act 78? Act 169 consists of 198 sections, and extends from page 476 to page 588 in the Acts of 1931. It repeals 320 sections of Crawford & Moses' Digest and 8 sections of Kirby's Digest, and either repeals or amends 19 separate acts of the General Assembly. What kind of a ballot title could be employed or devised which would advise the bewildered elector, when he saw the ballot which he was about to cast, what the effect of these changes would be? It must be remembered that the general election law provides that: "No elector shall be allowed to occupy a booth or compartment for the purpose of voting for a longer time than five minutes." Section 3800, Crawford & Moses' Digest. Several times that length of time would be required to read even a synopsis of act 169, even though the voter was not interested in any other question being voted on or in any candidate for office.

The answer to all such suggestions is that the Initiative and Referendum Amendment does not contemplate the particularity and certainty which would be required to meet the objections which the majority have found to the ballot title here submitted. The requirement of the amendment is that "at the time of filing petitions, the exact title to be used on the ballot shall by the petitioners be submitted with the petition." Now, as was said in the Westbrook case, *supra*: "The ballot title should be complete enough to convey an intelligible idea of the scope and import of the proposed law, and ought to be

free from any misleading tendency, whether of amplification, of omission, or of fallacy, and must contain no partisan coloring.'' These requirements could in most cases be met by employing as a ballot title the same title given to legislation by the General Assembly. The same rule, based upon the same reason, applies alike to legislation or measures initiated by or referred to the people. It would not be fair to permit the proponents of an initiated act to give it a title which was calculated to deceive the elector when he came to vote, and induce him, by reason of the misleading title, to vote for the measure; nor would it be fair to permit the opponents of the measure who had caused it to be referred to the people, to encompass its defeat by reason of a misleading title. It ought to convey an intelligible idea of the scope and import of the proposed law, without misleading tendency, and should contain no partisan coloring having that effect.

Now, under this test, it occurs to me that holding the ballot title insufficient and defective in the Westbrook case, *supra*, affords no justification for holding the ballot title insufficient in the instant case. There the suggested title read as follows: ''Referendum of the act of the Legislature of 1931, amending § 3505 of Crawford & Moses' Digest of the laws of the State of Arkansas so as to permit the granting of decrees of divorce to applicants who have resided in the State for a period of only three months.'' The act there sought to be referred did not permit the granting of decrees of divorce to applicants who had resided in the State for a period of only three months, and the majority thought it unfair and misleading to so state. What the act did—and all it did—was to shorten the time—which had previously been a year— during which one must reside in this State before having the right to sue for a divorce in the courts of this State. Unlike that title, the ballot title in the instant case contains no misstatement of a fact, and there is no omission or amplification or partisan coloring calculated or intended to mislead, in my opinion.

The first statement of the ballot title here under review is that ''The purpose of the act is to abolish the

State Board of Education elected by the people." And so it is.

The first section of act 78 repeals §§ 3, 6, 7, 8 and 22 of act 169. Section 3 of act 169 created a State Board of Education, composed of one member from each Congressional district, and by § 4 it was provided that the members "shall be elected by the qualified electors of each Congressional district at the regular annual school election." In other words, the electors of each Congressional district elect their own member, so that they are elected by the people.

The second statement of the ballot title is to "create a new State Board of Education appointed by the Governor." And so it is. Section 2 of act 78 reads as follows: "The State Board of Education as now constituted by law is hereby abolished, and there is hereby created a State Board of Education to be composed of seven members to be appointed by the Governor by and with the advice and consent of the Senate." This means, of course, that the appointment made by the Governor must be confirmed by the Senate, and, as stated in the ballot title, the appointments are made by the Governor, and if, for any reason, the appointments made are not confirmed, the Governor makes other appointments. The appointing power abides in the Governor.

But, again, I beg to suggest that if such mere matters of detail must be recited in the ballot title, as that an appointment made by the Governor must be confirmed by the Senate, then it will be difficult, if not impossible, to prepare a practical ballot title. It should not be required to employ a title of such length and intricacy as to cause the despair, if not the disgust, of the elector in the five minutes he is allowed to prepare and cast his ballot. This statement appears to me to be equally applicable to other objections made to the ballot title.

The third purpose stated in the ballot title is "To create the office of State Superintendent of Public Instruction." And so it is. The first paragraph of § 3 of act 78 reads as follows: "The office of Commissioner of

Education is hereby abolished and the office of State Superintendent of Public Instruction is hereby created.''

The fourth purpose is stated in the ballot title to be ''To repeal certain sections of the School Law which fixes the regular time of meeting for the State Board of Education, and requires said board to serve without remuneration.'' Section 6 of act 169 reads, in part, as follows: ''The State Board of Education shall meet annually on the second Monday in September in the office of the Commissioner of Education, and shall also hold regular quarterly meetings on the second Monday in December, March, and June.'' This section is expressly repealed by act 78, as stated in the ballot title.

Section 8 of act 169, which is expressly repealed by act 78, provided that: ''The members of the State Board of Education shall serve without remuneration, other than their actual expenses while attending meetings of the Board,'' so that the 4th statement of the purpose of the act appearing in the ballot title is literally true, except that the members of the State Board of Education under act 169 were allowed their actual expenses while attending meetings of the board. Being allowed this and nothing more, it may well be questioned whether the board members were to receive any remuneration. They were paid nothing for their services, and were only allowed expenses incurred while attending meetings to perform their otherwise unremunerated duties. This must be *de minimis.*

Now, it may or may not be wholly unimportant whether the board which is to administer the educational affairs of the State is elected or appointed, as the majority say. It is not, in my opinion, our function to say that there is no difference, when the number of electors required by the constitutional amendment to invoke its aid, have done so, for the purpose of retaining an elective rather than an appointive board.

It is said that the ballot title is partisan and colored, because it withholds from the voters the fact that the State Superintendent of Public Instruction, provided for by act 78, is to be elected by the people, because it had stated that the ''abolished board is elected by the peo-

ple," whereas the new board is "appointed by the Governor."

The majority opinion furnishes what appears to me to be a satisfactory answer to this objection, and that is, that the office of Superintendent of Public Instruction was not an innovation in the educational history of this State. We had had such an office for more than fifty years; in fact, since December 7, 1875, until it was abolished by recent school legislation, during all of which time that official had been elected as other State officers were elected. Section 8793, Crawford & Moses' Digest.

However, had the ballot title recited, as the majority say it should have done, that upon the re-creation of this office it would be filled as it had been during its former existence, it might have been objected that the statement was not accurate, but was partisan and colored, for the reason that § 3 of act 78 provides that: "Immediately after this act has taken effect and is in force, the State Board of Education herein created shall elect a State Superintendent of Public Instruction, who shall serve until the next general election and until his successor is duly elected and qualified."

Can it be imagined that any one could prepare a ballot title to which no objection could be found, and which would be approved by all persons who considered it? On the contrary, it is impracticable, if not impossible, except in very simple matters of legislation, to advise the elector what the exact state of the law will be after the measure has been adopted or rejected by the people, and no such requirement should be imposed if the Initiative and Referendum Amendment is to produce the results, the anticipation and expectation of which induced its adoption.

The majority have said nothing about the substitute ballot title which was submitted in anticipation of the possible rejection of the original title submitted along with the petition, and I shall not, therefore, consider its sufficiency, as, in my opinion, the original title was sufficient. But I feel constrained to say that it was expressly held in the former opinion in this case to which the majority opinion refers, that the ballot title is a part of the

petition. *Shepard* v. *McDonald*, 188 Ark. 124. The amendment expressly provides that the petition may be amended; therefore, the ballot title, which is a part of the petition, may be amended. The amendment provides that: "If the Secretary of State * * * shall decide any petition to be insufficient, he shall, without delay, notify the sponsors of such petition, and permit at least thirty days from the date of such notification * * * for correction or amendment."

Prior to the decision in this case there was no occasion to invoke this provision of the amendment, because the title had not been held insufficient. On the contrary, the Secretary of State held it to be sufficient. He must now, under the majority opinion, hold the ballot title insufficient, and, this being true, an opportunity to amend, for which the amendment itself provides should be afforded.

I therefore most respectfully dissent and am authorized to say that Justices MEHAFFY and McHANEY concur in the views here expressed.

MEHAFFY, J., (dissenting). I do not agree with the majority in holding that the ballot title is insufficient because it is misleading, colored or partisan, or that it is insufficient or defective for any other reason. I wrote a dissenting opinion in the case of *Westbrook* v. *McDonald*, in which I reviewed the authorities, and I do not deem it necessary to review all those authorities again. The dissenting opinion in the Westbrook case may be found in 184 Ark., beginning at page 753, 44 S. W. (2d) 331.

Mr. Justice SMITH, in his dissenting opinion in this case, has called attention to the law which prohibits any elector from occupying a booth or compartment for the purpose of voting for a longer time than five minutes. During that time, the voter must cast his vote for State, district, county and township officers. It would be unreasonable to expect any voter, within that time, to have any time to study ballot titles or anything else, except simply to cast his vote.

The law provides that, when a petition is filed to refer any act to the people, there must be filed with the petition an exact copy not only of the title, but of the act

itself, and the only useful purpose of the ballot title is to enable the voter to identify that with the act filed in the Secretary of State's office, or the one published in the newspapers. It would be entirely unreasonable to expect a voter, in five minutes, to study the ballot title for any other purpose than to identify it with the act which he is supposed to have read.

The Constitution simply provides that the exact title to be used on the ballot shall be, by the petitioners, submitted with the petition. There is no intimation or suggestion in the Constitution or the law as to what the title shall contain.

I have no doubt that a ballot title might be prepared by each of a dozen lawyers, and that they would all be different, and I submit that no one could prepare a ballot title that every one would agree was correct. Voters are not expected, within five minutes, to get information about the merits of an act and decide whether they want to vote for or against it; they are supposed to have that knowledge before they go into the booth to vote. That is the reason that the law requires an exact copy of the act to be filed with the petition, and that is the reason that the act is required to be published in every county in the State for four months. The voters get their information as to the purpose of the act from the act itself, and not from the ballot title.

I think the decisions of this court have annulled the amendment to the Constitution providing for referendum. It should not be required that the ballot title should be such that the voters could learn the purpose and effect of the act from it. It should be such only as identifies it with the act filed in the Secretary of State's office and published in each county. I do not believe that any lawyer could prepare a ballot title that some one would not object to.

The Supreme Court of Oregon, in discussing ballot title, said:

"There is nothing in the Constitution as amended implying that the full title as appears in the proposed measure shall appear upon the ballot, nor does the act under consideration so require. The method provided

is adequate to identify the bill, as indicated on the ballot, with the proposed measure on file in the office of the Secretary of State, the full title and text of which appear in pamphlets, a copy of which, under the law in force at the time the local option law was voted on, was presumably in the hands of each voter. The method then in use, and as since improved upon, was, and is, analogous to the proceeding before the legislative assembly. There, before the roll call for voting on a proposed measure is had, the presiding officer announces that "We are about to vote on House (or Senate) Bill No. 104, or whatever number the bill may have, which number as thus announced identifies the bill to be voted upon with the printed bill on the desk of each member. True, the title is previously read, as is the entire bill, and so it is presumed to have been previously read by each voter under the initiative system.

"The only question, then, to determine is, Does the title as designated and used on the ballot come within the purview of the Constitution as amended and supplemented by the act of 1903? We think it does. * * * As above stated, the title of a bill before the legislative assembly is required to be read with the measure to be voted upon, and the full title is presumed to appear thereon. This method under the initiative would be impracticable; for, as manifest from the length of the title of the act under consideration, if many measures should be submitted to the voters at one time, to print upon the ballot a full title to each would require the ballot to contain many pages of printed matter, which cumbersome method was plainly intended to be avoided. To recognize the rule invoked by appellant would defeat the very purpose contemplated by the adoption in our fundamental laws of our direct, and additional, system of lawmaking. The system provided, as above considered, was obviously designed to take the place of that employed by the Legislature, and accomplishes the same result." *State* v. *Langworthy,* 55 Ore. 503, 104 Pac. 424, 106 Pac. 336.

The Oklahoma Supreme Court said: "As to the ballot title prepared and filed with the Secretary of State and with the Attorney General, it appears that the parties

submitting the proposition have complied with the law. The ballot title was prepared by the Attorney General, acting in conjunction with the attorney for the parties submitting the proposition, and contains the gist of the measure, without any argument or statement either for or against it. The protestant has offered no substitute title for the one prepared and filed, as required by section 3377." In Re Referendum Petition No. 30, State Question No. 94. 71 Okla. 91, 175 Pac. 500.

The protestants here have offered no substitute title and the court offers none. If the title is defective, as the majority holds, then it would seem to be fair that either the protestants or the court should prepare a title that would be sufficient. That is especially true in this case because, since the decision, the Secretary of State is compelled to hold that the ballot title is insufficient; but whenever he makes that holding, the law provides that the parties shall be notified and given an opportunity to amend.

What could be accomplished by amending, if the amended or substituted ballot title is to be attacked with no reason to believe that it will be held sufficient? If the court would prepare a substitute ballot title, the people would then be permitted to vote on the act and the constitutional amendment providing for referendum would not be made ineffective. The purpose of the amendment was to permit the public to vote on measures like this; and if the ballot title is held insufficient by the court, the court certainly should tell them what would be a sufficient ballot title.

In the case of *State* v. *Duluth & N. M. Ry. Co.*, 102 Minn. 26, 112 N. W. 897, it was claimed that the act did not repeal the provisions of prior statutes. The Supreme Court of Minnesota said: "It is perfectly obvious from a mere reading of this statute, and we so hold, that it was intended to and did repeal all classifications of railroad companies in the matter of taxation," etc.

In the case of *Wagoner* v. *City of LeGrande*, 89 Ore. 192, 173 Pac. 305, the court, in discussing the ballot title, said: "We think that the title of the act is sufficient.

"The ballot title expressly directed attention to the amendment to the charter authorizing these assessments. It was sufficient within the rule announced in *State* v. *Langworthy*, 55 Ore. 303, 104 Pac. 424. The amended complaint admits that the election at which the charter was adopted was duly and regularly held. It follows from this admission that every voter received a copy of the proposed amendment with the official arguments, if any, for and against its adoption. We must assume that the electors voted intelligently, and there is nothing in the record to impeach the validity of their action."

In this State the act must be published in every county, and every voter has a right and an opportunity to read it; and, as said by the Oregon court, we must assume that they will vote intelligently.

I think the Westbrook case is wrong and should be overruled, but, if that is not done, this case can be clearly distinguished, in my judgment, from the Westbrook case, and this ballot title should be held sufficient, so as to permit the people to vote on the question. If, however, the ballot title is insufficient, the court should prepare one that meets with its approval, to the end that the people may be permitted to vote on this act.

The North Dakota court said:

"Distinction must be made between the 'ballot title' and the statement of the question to be voted upon. The proposed 'ballot title' is not misleading. It does not purport to be a statement of the question—it is merely the title. It is possible it could be improved. It may not be labeled the way others may label it; but the only way it could have been stated at the time the petition was circulated was as 'Senate Bill No. 100,' and, in addition, to prevent any misunderstanding it stated this bill provided for the tax of 4 cents per gallon. * * * Strenuous objection is made to the form of the 'ballot title,' as if this constitutes the manner in which the electors will be apprised of the contents of the law referred." *Schumacher* v. *Byrne*, 61 N. D. 220, 237 N. W. 741.

In this case more than 25,000 voters signed the petition for the referendum, and yet, because the leaders of the movement failed to prepare a ballot title in the man-

ner this court thinks it should have been prepared, these more than 25,000 voters are not permitted to have the act referred. The Secretary of State, whose duty it is to pass on the ballot title, thought it was sufficient; the petitioners thought it was sufficient, and three members of this court think it is sufficient.

I think when there is such difference of opinion about it that the doubt, whatever it is, should be resolved in favor of the ballot title, thereby enabling the people to vote on this measure.