NEWTON *v.* HALL, SECRETARY OF STATE.

4-5352                    120 S. W. 2d 364.

Opinion delivered October 19, 1938.

930

*P. A. Lasley,* for plaintiff.

*Jack Holt,* Attorney General, *Leffel Gentry,* Assistant, and *Rose, Hemingway, Cantrell & Loughborough,* for defendant.

*Shane & Fendler, Daggett & Daggett* and *Burke & Burke, amici curiae.*

SMITH, J. The only question presented for our consideration and decision in this case is the sufficiency of the ballot title under which it is proposed to submit Amendment No. 28 to the electors for their action at the coming general election. This amendment is generally referred to as the Refunding Amendment.

To present the objections made to the sufficiency of the ballot title it will be necessary to copy the amendment in this opinion, notwithstanding its length, and in doing so we shall, after copying each section of the amendment, also copy the portion of the ballot title relating to that section.

Section 1 of this amendment reads as follows:

"Section 1. The Refunding Board created by § 1 of act 11 of the Second Extraordinary Session of the Forty-ninth General Assembly of the state of Arkansas, approved February 12, 1934, may issue refunding bonds of the state of Arkansas for the purpose of refunding all bonds and obligations issued under said act. Bonds of the state of Arkansas may from time to time be issued hereunder and exchanged for the bonds and obligations, of equal face amount, which are described in said act 11 of 1934, at the following rates:

"For bonds or obligations which bear interest at the rate of five per cent., bonds may be issued hereunder bearing interest at not more than four per cent.; for bonds or obligations which bear interest at the rate of four and three-fourths per cent., bonds may be issued hereunder bearing interest at not more than three and nine-tenths per cent.; for bonds or obligations which bear interest at the rate of four and one-half per cent., bonds may be issued hereunder bearing interest at not more than three and three-fourths per cent.; for bonds or obligations which bear interest at the rate of four and one-fourth per cent., bonds may be issued hereunder bearing interest at not more than three and one-half per cent.; for bonds or obligations which bear interest at three and one-half per cent., bonds may be issued

hereunder bearing interest at not more than three per cent.; for bonds or obligations which bear interest at not more than three per cent., bonds may be issued hereunder bearing not more than the same rate of interest.

"Bonds issued hereunder and exchanged for Road District Refunding Bonds, Series B, shall not bear interest until January 1st, 1949, and from that date at such rate as may be prescribed by the General Assembly, but not exceeding three per cent. per annum.

"The bonds and obligations issued under the provisions of said act 11 of 1934, and not refunded under this amendment may be refunded in such other manner as the General Assembly may direct; but the bonds so refunded shall not share in the benefits of this amendment as all such benefits are reserved for bonds issued hereunder.

"Should the office of State Bank Commissioner be abolished by the General Assembly then the other officials mentioned in § 1 of said act 11 of 1934, shall continue to function as the Refunding Board.

"The Refunding Board shall prepare the forms of all bonds to be issued under this amendment, and fix the dates and maturities thereof.

"All bonds issued under this amendment shall be signed with the facsimile or lithographed signature of the Governor and Secretary of State, and by manual signature of the Treasurer of State or his deputy, and sealed with the great seal of the state. The interest coupons attached thereto shall be signed with the facsimile signature of the Treasurer of State. Delivery of the bonds so executed shall be valid notwithstanding any change in such officers occurring after their execution.

"The Treasurer of State shall keep a record of all bonds issued hereunder containing full descriptions of said bonds and the coupons thereto attached, including numbers, dates, amounts, maturities and rates of interest. Any bond issued hereunder may be registered by the Refunding Board in such manner as it may direct upon the request of the holder. Such bond when registered shall thereafter be non-negotiable until the reg-

istration is cancelled by an indorsement of the Governor and Treasurer of State."

The portion of the ballot title relating to this section reads as follows:

"A proposed constitutional amendment to authorize the refunding of all bonds and obligations issued by the state of Arkansas under the terms of act No. 11 of the Second Extraordinary Session of the Forty-ninth General Assembly of the state of Arkansas, approved February 12, 1934; to provide that all bonds and obligations other than those bearing interest at three per cent. be refunded at a lower rate."

Section 2 of the amendment reads as follows:

"Section 2. Refunding bonds issued under this amendment may be issued from time to time as they can be exchanged for bonds and obligations described in said act 11 of 1934, of equal face amounts, at the interest rates as provided in § 1 hereof. When bonds herein authorized can be sold at not less than par, bonds and obligations issued under said act 11 of 1934, and then outstanding, may be called as provided in said act 11 of 1934, or may be purchased on the market, with the proceeds from the sale of bonds issued hereunder. When bonds are purchased on the market the procedure in making such purchases shall conform as near as may be to the procedure prescribed by §§ 37 and 38 of said act 11 of 1934. Bonds can be issued for sale hereunder only when the proceeds are to be used for the purpose of calling or purchasing the bonds or obligations issued under said act 11 of 1934, and only when the annual saving in interest will be not less than one-fifth of the interest paid on the bonds or obligations called or purchased. Bonds issued for sale hereunder shall not be sold at less than par on the basis of interest at the rate of four per cent. per annum from the date of the bonds, but if they bear interest at less than four per cent. they may be sold for less than par, provided, the amount received and the interest to be paid shall be the equivalent of not less than par on a basis of interest at the rate of four per cent. per annum. All bonds issued

under this amendment shall be negotiable and the direct general obligations of the state of Arkansas, for the payment of which its full faith and credit and all of its resources are hereby irrevocably pledged. The funds coming into the custody of the Commissioner of Revenues which are to be remitted to the paying agent or agents of the bonds issued hereunder are declared to be trust funds and dedicated to the payment of such bonds and the interest thereon. Such bonds shall be payable at a bank or trust company of New York, New York, or St. Louis, Missouri, or in both cities, to be chosen by the Refunding Board; provided, however, that bonds issued hereunder for the purpose of funding certificates of indebtedness issued to municipal improvement districts under the terms of act 11 of 1934, may be made payable at a bank or trust company in the city of Little Rock, Arkansas.

"It shall be the duty of the Commissioner of Revenues to place in the hands of the paying agent or agents of any bonds issued hereunder, at least ten days before the maturity of any installment of principal or interest, sufficient funds to pay the same, plus the customary paying charges. Any surplus in the hands of the paying agent or agents may be withdrawn and used by the Refunding Board only to purchase bonds which are issued hereunder, in exchange for or for the purpose of purchasing the bonds and obligations issued under said act 11 of 1934. The procedure in making such purchases shall conform as near as may be to the procedure prescribed by §§ 37 and 38 of said act 11 of 1934."

The reference to this section contained in the ballot title reads as follows:

"To pledge certain revenues and the full faith and credit of the state of Arkansas for the payment of bonds issued under this amendment."

Section 3 of the amendment reads as follows:

"Section 3. The holders of the bonds issued hereunder for the purpose of refunding the bonds and obligations issued under said act 11 of 1934, shall be subrogated to all the rights and equities of the holders of

such bonds or obligations except as provided in § 7 hereof.

"If and when bonds and obligations issued under said act 11 of 1934 are refunded hereunder, either by exchange or by purchase with funds obtained by the sale of bonds issued hereunder, then the proportionate part of the revenues pledged to the payment of such refunded bonds shall be released from the operation of said act 11 of 1934 and stand pledged to the payment of the bonds issued hereunder for refunding purposes, and to that extent such bonds shall have priority over the other bonds issued hereunder."

The reference to this section contained in the ballot title reads as follows:

"To subrogate the holders of such refunding bonds to the rights and equities of the holders of the bonds refunded."

Section 4 of the amendment reads as follows.

"Section 4. There is hereby created the office of the Commissioner of Revenues. The Governor, by and with the consent of the Senate, shall appoint some citizen of this state, at least thirty years of age, to serve as Commissioner of Revenues. If the Senate be not in session when such appointment is made the appointee shall qualify and hold office until the Senate next convenes. Such appointee shall take, subscribe and file in the office of the Secretary of State the constitutional oath of office. He shall take over all the records, books and papers in the office of the present Commissioner of Revenues. He shall perform all the duties of the present Commissioner of Revenues. He shall perform such additional duties as hereafter may be prescribed by law. He shall be required to file a bond such as that which is now required by § 13342 of Pope's Digest of the Statutes of Arkansas. The General Asssembly may fix the number of his deputies and employees and their compensation. The Commissioner of Revenues shall hold office for the term of four years, and until his successor is appointed and qualified. Until changed by the General Assembly he shall receive the present salary paid to the Commissioner

of Revenues, and no law shall be passed reducing such salary to less than seventy per cent. of the present salary. Should the General Assembly fail to make an appropriation to pay such salary, and the necessary expenses of the office, the Commissioner of Revenues may pay his own salary and such necessary expenses out of the moneys which he receives other than that, which by the terms hereof, he is required to pay to the Treasurer of State. All moneys now or hereafter derived from the tax on gasoline and other motor vehicle fuels and automobile licenses and other highway revenues shall be payable to the Commissioner of Revenues. He shall at intervals of not less than three months file duplicate records of all receipts and disbursements with the State Auditorial Department.

"The Commissioner of Revenues shall, during each fiscal year, pay to the Treasurer of State any and all receipts from tax on gasoline or other motor vehicle fuels and automobile license fees which are pledged to the payment of bonds and obligations issued under said act 11 of 1934, which are not refunded hereunder, and all other amounts which by the terms of said act 11 of 1934 he is required to pay to the Treasurer of State. It is the purpose and intention of this amendment to provide for the refunding of the indebtedness referred to herein without in any way impairing the obligations of the contracts created by said act 11 of 1934, and the proceedings taken thereunder.

"The balance of the receipts from the tax on gasoline or other motor vehicle fuels and automobile license fees; the receipts from act 9 of the Extraordinary Session of the Fifty-first General Assembly of the state of Arkansas, approved April 1, 1938, (highway in transit taxes); all other highway revenues which may be collected under any existing law or under any law which may be enacted in the future; and all interest saved by refunding hereunder shall be remitted daily to the paying agent or agents of the bonds issued hereunder.

"After remitting the amounts necessary to pay the bonds issued hereunder and the interest thereon then

the Commissioner of Revenues may withhold such amounts as may be required to pay interest at three per cent., and then the average annual maturities of bonds of bridge improvement districts, road improvement districts and road maintenance districts which have not been refunded, as provided in § 9 hereof, and the expenses which may be payable under § 5 hereof.

"Whenever highway revenues from all sources in any fiscal year are in excess of $10,985,000, then such excess shall be paid by the Commissioner of Revenues to the Treasurer of State, and placed to the credit of the special account, the funds of which may be used only for highway construction or for the purchase of bonds issued hereunder as provided in § 12 hereof."

The reference to this section contained in the ballot title reads as follows:

"To create the office of Commissioner of Revenues, to define the qualifications, duties, and salary of the person appointed to fill such office; to provide that all moneys derived from the tax on gasoline and other motor vehicle fuels and automobile licenses and other highway revenues shall be paid to the Commissioner of Revenues; to authorize the Commissioner of Revenues to make direct remittances to the paying agent or agents of the refunding bonds from the receipts coming from the tax on gasoline and other motor vehicle fuels, automobile licenses, and other highway revenues pledged for the payment of such bonds."

Section 5 of the amendment reads as follows:

"Section 5. No fiscal agent's fee shall be paid on the sale of any bonds issued hereunder. Any expense of an exchange of outstanding bonds for bonds issued hereunder, bearing a lower rate of interest, shall be controlled by the Refunding Board and shall be paid by the Commissioner of Revenues out of the first year's saving in the interest reduction from funds which otherwise would be used for the payment of interest on the higher interest rate bonds refunded. Provided, however, that when three per cent. (3%) bonds are exchanged, the expenses of the exchange shall be controlled by the Refund-

ing Board and shall be paid by the Commissioner of Revenues from funds which are not pledged under said act 11 of 1934.''

The reference to § 5 contained in the ballot title reads as follows:

''To forbid the payment of a fiscal agent's fee for selling any of the refunding bonds, but to permit the payment of expenses incurred in making an exchange of bonds.''

Section 6 of the amendment reads as follows:

''Section 6. All of the covenants and obligations contained in said act 11 of 1934 are ratified and declared to be inviolable contracts in so far as they inure to the benefits of the holders of the bonds issued hereunder. If any officer fails to perform his duties as prescribed in said act 11 of 1934 or in this amendment or under any law passed in aid hereof or supplemental hereto, he may be compelled by mandamus or mandatory injunction to perform such duties at the suit of the holder of any bond issued hereunder.''

The reference to § 6 contained in the ballot title reads as follows:

''To authorize mandamus or mandatory injunction to compel any official to perform the duties required of him by this amendment or by any act passed in aid hereof or supplemental hereto.''

Section 7 of the amendment reads as follows:

''Section 7. All bonds or obligations taken in exchange for bonds issued hereunder or redeemed as herein provided shall be cancelled by the Treasurer of State by perforation and Road District Refunding Bonds with the old Road Improvement District Bonds held as collateral security shall be cancelled and destroyed in the manner prescribed by § 6 of said act 11 of 1934.

''When the records of the Treasurer of State show that all the bridge district bonds or road district bonds of a particular issue have been cancelled as herein provided, he shall make a certificate in triplicate to that effect, transmitting one copy to the trustee for the particular issue, one copy to the paying agent thereof, and

one copy to the clerk of the circuit court of the county or counties where the pledge or mortgage given for the security of said bridge bonds or road district bonds is recorded; and the said circuit clerk shall record said certificate in a book in which mortgages are recorded, and shall enter upon the margin of said mortgage an annotation of the satisfaction thereof, with the date thereof, and shall append his signature to such entry.''

The reference to § 7 contained in the ballot title reads as follows:

''To provide for cancellation of the bonds and obligations refunded and the road district bonds which are pledged as security therefor.''

Section 8 of the amendment reads as follows:

''Section 8. In case the proceeds of the tax on gasoline or other motor vehicle fuels and fees for automobile licenses, and other highway funds, shall prove inadequate to pay the bonds issued hereunder, it shall be the duty of the General Assembly to provide for such excise and use taxes as will provide a sufficient revenue for that purpose, and, if necessary to make up a deficit an *ad valorem* tax, so as to raise a total annual revenue of $8,985,000.''

The reference to § 8 contained in the ballot title reads as follows:

''To obligate the state of Arkansas to produce for payment of bonds and interest an annual revenue of at least $8,985,000; . . . and in the event of a deficiency of revenues from such sources to obligate the state of Arkansas to make up such deficiency from excise and use taxes or from an *ad valorem* tax.''

Section 9 of the amendment reads as follows:

''Section 9. The principal of the valid bonds of bridge improvement districts and the principal of the valid bonds of road improvement districts and road maintenance districts, whether organized before or since the passage of act 11 of the General Assembly of the year 1927, approved February 4, 1927, which were outstanding on January 1, 1938, are hereby assumed by the state of Arkansas, and it hereby obligates itself to pay

interest thereon at the rate of three per cent. per annum. The Refunding Board shall issue refunding bonds hereunder, bearing interest at the rate of three per cent. per annum, and exchange them where an exchange can be made for the outstanding valid bonds of such bridge improvement districts, road improvement districts, and road maintenance districts. Until such bonds are exchanged hereunder, it shall be the duty of the Commissioner of Revenues to remit semi-annually to the paying agent of such bonds interest at the rate of three per cent. per annum on the outstanding bonds of such district, and also to remit annually a sum equal to the average annual maturity of the principal of such district's total outstanding bonds, which annual remittances shall be applied to the payment of such bonds in their numerical order.''

The reference to § 9 contained in the ballot title reads as follows:

''To authorize the exchange of three per cent. bonds issued under this amendment for the valid bonds of bridge improvement districts, road improvement districts, and road maintenance districts outstanding on January 1, 1938; to authorize the Commissioner of Revenues to pay interest at three per cent. and the average annual maturities of principal of the valid bonds of bridge improvement districts, road improvement districts and road maintenance districts, outstanding on January 1, 1938, which are not refunded.''

Section 10 of the amendment reads as follows:

''Section 10. During the road building program of 1927 to 1930, inclusive, parity was established. To maintain parity as near as may be, the State Highway Commission, in determining where new highway construction work shall be done and in allotting funds for such work, shall always take into consideration the highway revenues collected in the various counties and the amount of bonded indebtedness of improvement districts in such counties assumed or paid by the state of Arkansas.''

The reference to § 10 contained in the ballot title reads as follows:

"To provide that parity in road construction be maintained."

Section 11 of the amendment reads as follows:

"Section 11. Whenever all of the bonds participating in any one of the four redemption accounts as provided for in § 2 of said act 11 of 1934, shall be fully paid, then the revenue pledged to such particular redemption account shall be released and shall stand pledged to the payment of the bonds issued hereunder; and shall be remitted by the Commissioner of Revenues as herein provided to the paying agent or agents of the bonds issued hereunder."

The reference to § 11 contained in the ballot title reads as follows:

"To provide for the release, under certain conditions of revenues pledged to the payment of bonds issued under said act No. 11 of 1934; . . . to subrogate the holders of such refunding bonds to the rights and equities of the holders of the bonds refunded."

Section 12 of the amendment reads as follows:

"Section 12. The State of Arkansas hereby covenants with the holders of the bonds issued hereunder that the tax on gasoline and other motor vehicle fuels and automobile license fees and other highway revenues shall never be reduced to such an extent that they will not produce an annual net revenue of at least $8,985,000.

"Whenever the receipts from the tax on gasoline and other motor vehicle fuels, automobile licenses and other highway revenues shall in any fiscal year exceed $10,985,000, then the excess shall be paid to the Treasurer of State, and shall be first applied so as to increase the amount payable to the county highway fund for such fiscal year to fifteen per cent. of the total receipts from the tax on gasoline and other motor vehicle fuels, and the balance shall be placed in a special account and used for the purpose of road construction by matching federal aid or for road construction by the State of Arkansas; provided, however, the General Assembly may authorize the use of such funds for the purchase of bonds issued hereunder when they can be bought on tender at such a discount as will bring about a substantial saving to the

State of Arkansas. Any statute attempting to divert the funds placed in such special account to any other purpose or attempting to permit such funds to be borrowed shall be void.''

The reference to § 12 contained in the ballot title reads as follows:

''To covenant that the state of Arkansas will never reduce the tax on gasoline and other motor vehicle fuels, and automobile licenses, and other highway revenues to such an extent that they will not produce an annual net revenue of $8,985,000; . . . to provide that when the revenues from the tax on gasoline and other motor vehicle fuels, automobile licenses and other highway revenues shall in any fiscal year exceed $10,985,000, then the excess shall be paid to the Treasurer of State and first applied so as to increase the amount payable to the county highway fund for such fiscal year to fifteen per cent. of the total receipts from the tax on gasoline and other motor vehicle fuels, and that the balance be placed in a special account and used for road construction by matching federal aid or for road construction by the State of Arkansas, but to permit the General Assembly to use such funds to purchase bonds issued hereunder when they can be purchased at a discount; to provide that any statute attempting to divert the funds placed in such special account to any other purpose or to permit such funds to be borrowed shall be void.''

Section 13 of the amendment reads as follows:

''Section 13. It is not the intention of this amendment to impair the force and effect of amendments nineteen and twenty to the Constitution except so far as may be necessary to give effect to this amendment. In every other respect said amendments nineteen and twenty are to remain in full force and effect.''

The reference to § 13 contained in the ballot title reads as follows:

''To provide that amendments nineteen and twenty to the Constitution of Arkansas, except as modified by this amendment shall remain in full force and effect.''

Section 14 of the amendment reads as follows:

"Section 14. Each sentence, paragraph and section of this amendment shall be separable, and in the event any sentence, paragraph or section is declared to be violative of the Constitution of the United States, then the remainder of this amendment shall not be affected. If any provision of this amendment as applied to any person or under any circumstances, shall be declared to be violative of the Constitution of the United States, the application of such provision to other persons or under other circumstances shall not be affected."

The reference to § 14 contained in the ballot title reads as follows:

"To provide that the provisions of this amendment are separable."

Section 15 of the amendment reads as follows:

"Section 15. This amendment shall be self-executing and no legislation shall be required to put it in full and immediate operation, but the General Assembly may enact laws to facilitate its operation."

The reference to § 15 contained in the ballot title reads as follows:

"To provide that this amendment shall be self-executing; *and for other purposes.*"

It thus appears that the amendment consists of fifteen sections, and that the ballot title contains references to each of them, summarizing the subject covered by the respective sections.

It is difficult to conceive how a ballot title could be more comprehensive, unless, indeed, it were so annotated as to show what the effect of each section would be when it becomes a part of the law of the land. If this were done—and it would be necessary to do so to comply with all the objections made to the ballot title—the title would be much longer than the amendment itself, and would be something more than a title intended to identify the amendment.

So many objections are urged to the sufficiency of the ballot title in the able brief and in the extended oral argument of counsel for the plaintiff that this opinion would be protracted to an interminable length if all were discussed. We must content ourselves with the discussion

only of those objections which appear most serious and, having done so, then determine whether they render the ballot title insufficient.

Certain of these objections carry an *ad hominem* appeal, the chief of these being that it is proposed to increase the state's bonded debt by having the state assume the payment of valid bonds of certain improvement districts outstanding on January 1, 1938, which the state has not heretofore assumed. As to this question, or any other question of policy, we are not concerned as members of the court. It suffices to say that the reference to § 9 of the amendment, so providing, set out above, discloses that the amendment has this purpose and will accomplish that result.

A similar objection is to the effect that § 4 of the amendment will authorize the Commissioner of Revenues to deposit the funds he is required to collect with a paying agent who may not reside in this state. An answer similar to the previous objection may be made. The reference to § 4 contained in the ballot title, copied above, discloses that the Commissioner of Revenues is given this power.

It is argued that the ballot title does not disclose what taxes will be imposed. A proposed ballot title was held insufficient in the case of *Walton* v. *McDonald,* 192 Ark. 1155, 97 S. W. 2d 81. The ballot title in that case read that the proposed act was "An act to provide for the assistance of aged and/or blind persons, and funds therefor, the administration and distribution of same, penalties for the violation of the act, and for other purposes." That title was held inadequate because it did not disclose the proposed manner of making this provision, which was by levying a general sales tax, and the appropriation of certain other revenues, which we said was of the essence of the act. The opinion in that case set out the proposed ballot title which was held insufficient because it failed to disclose the essential fact that it proposed to levy a general sales tax. We said in that case that, while the imposition of this tax was of the essence of the act and should, therefore, have been stated in the ballot title, it was not essential that the ballot title disclose what the

provision, or the amount thereof, for the beneficiaries of the act should be. In other words, it was not essential that the ballot title should contain a synopsis of the act.

Upon the authority of that case it is argued that the ballot title here involved does not disclose that a tax is imposed, or, if so, what, if any, limitation there is upon this taxation. But the reference, above quoted, to § 12, appears to answer this objection. It discloses the source of the revenues to be devoted to the purposes of the act, and that the purpose of the amendment is "to covenant that the state of Arkansas will never reduce the tax on gasoline and other motor vehicle fuels, and automobile licenses, and other highway revenues to such an extent that they will not produce an annual net revenue of $8,-985,000; . . ." It thus appears that the objection held valid to the ballot title in the Walton case is absent here.

It is objected that the ballot title makes the state subject to suit without disclosing that fact, and that it makes the General Assembly itself subject to mandamus and does not disclose that fact. The ballot title does not disclose either of these facts, and should not do so, for the reason that we find nothing in the amendment which would accomplish either of those results. Section 6 of the amendment does make the officers charged with the administrative duties under the provisions of act 11 of the Special Session of 1934 (p. 29) subject to mandamus. The ballot title discloses that fact, but this effects no change in the law as it now exists. These officers are already subject to mandamus under the provisions of § 54 of act No. 11, *supra.* Officers charged with duties under the amendment, or under any law passed in aid thereof, may, by mandamus, as under act No. 11, *supra,* be compelled to perform their duties; but the persons made subject to mandamus are not the members of the General Assembly who pass the law, but are those persons clothed with duties under laws passed by the General Assembly. We find nothing in the amendment which appears to be intended to make the General Assembly itself subject to mandamus, nor to make the state subject to a suit. The

ballot title is, therefore, not defective in failing to make these unwarranted statements.

It is objected that the ballot title does not indicate that a new state officer has been created; but the reference to § 4, above copied, does disclose that fact. It is objected that the amendment does not fully disclose the duties of this new officer. We think, however, that it will appear from our cases later to be discussed that this was not essential, and we do not review other objections because we think they are answered by the discussion of these cases. We briefly review them.

The ballot title in the case of *Westbrook* v. *McDonald,* 184 Ark. 740, 43 S. W. 2d 356, 44 S. W. 2d 331, was held defective because the ballot title left the erroneous impression that a residence in the state for ninety days was a cause for divorce, instead of being a requirement as to the period of residence before obtaining a decree for divorce. In that case we announced the test of the sufficiency of a ballot title to be that it should be complete enough to carry an intelligent idea of the scope and import of the proposed law, and that it should be free from misleading tendency, whether of amplification or omission or of fallacy, and must contain no partisan coloring. This test has never been departed from in the subsequent cases, and we have attempted to determine the sufficiency of ballot titles in the cases presented by the application of this rule to the titles under review.

In the case of *Shepherd* v. *McDonald,* 189 Ark. 29, 70 S. W. 2d 566, we reaffirmed this statement of the law, but by a vote of four to three the court held the ballot title there under review defective for the reason that in the opinion of the majority there was a misleading tendency of amplification, of omission, and of fallacy, and that the title contained partisan coloring.

The previous decisions were reviewed in the case of *Coleman* v. *Sherrill,* 189 Ark. 843, 75 S. W. 2d 248. There the title of an initiated act was employed as a ballot title. It reads as follows: ''An act to fix the salaries and expenses of county officers and to fix the manner in which such compensations and salaries shall be paid and to reduce the cost of county government, and for other pur-

poses." Many of the objections here urged were made to that act, among others, that § 15 thereof provided a manner for the purchase of supplies for the county and its officials which was not disclosed by the ballot title, nor were various other provisions of the act disclosed by the ballot title, as for instance, what the salaries and expenses of the officers should be. In the opinion, in which all the judges concurred, we held that the provisions of amendment No. 7, with reference to ballot titles, should be liberally construed, and that the ballot title was sufficient. In so holding we said: "It may be observed that if the ballot title were intended to be so elaborate as to set forth all the details of the act, the publication, or advertisement, might, for that very obvious reason, be omitted. Perhaps no set rule or formula can be announced as to what a ballot title shall contain, but it may be safely stated that, if it shall identify the proposed act and shall fairly allege the general purposes thereof, it is sufficient."

That case quoted the language of Chief Justice Mc-Sherry of the court of appeals of Maryland in the case of *Mayor of City of Baltimore* v. *Stewart*, 92 Md. 535, 48 Atl. 165, as follows: "It has never been understood that the title of a statute should disclose the details embodied in the act. It is intended simply to indicate the subject to which the statute relates. . . . When the general subject is indicated, no detail matters need be mentioned in the title."

These holdings were all reaffirmed in the case of *Blocker* v. *Sewell*, 189 Ark. 924, 75 S. W. 2d 658, where the title of a proposed initiated act was held sufficient as the ballot title.

We have already referred to the case of *Walton* v. *McDonald, supra,* and have stated the reason why the ballot title there questioned was held insufficient. The act which that case involved was again initiated, and the defect in the first ballot title was cured. The sufficiency of the ballot title to this second act was the point decided in the very recent case of *Lewis* v. *Hall, ante* p. 115, 116 S. W. 2d 353. The opinion in that case, only one page in length, sets out in full the ballot title, but does not discuss

any of the numerous provisions of the proposed act. Here we have an amendment which deals only with the single question of refunding the state's bonded highway debt. There we had an act which dealt comprehensively and originally with the state's pension law. That act contained forty-nine sections, two of which (§§ 28 and 29), with the paragraphs and subdivisions thereof, being much longer than the amendment here involved. There are innumerable administrative provisions in this act, a number of which relate to the disbursement of the revenues which the act was intended to provide, none of which are reflected or referred to in the ballot title, yet that ballot title was held sufficient in an opinion in which all the members of the court concurred, for the reason, there stated, ". . . that the ballot title sufficiently recites the general purposes of the proposed initiated act; . . . and that the ballot title contains enough information to sufficiently advise electors voting at the November 8, 1938, election of the true contents of the proposed act."

The brevity of the ballot title here involved does not appear to be its chief fault. Rather, like this opinion, its very length is a more serious objection. The elector could not read many such ballot titles within the five minutes he is allowed by § 4770, Pope's Digest, "to occupy a booth or compartment for the purpose of voting."

The ballot title here involved appears to meet the requirements as defined in the cases here discussed, and for that reason the prayer of the plaintiff "that the Secretary of State be restrained from certifying said measure to the election commissioners of the several counties of the state" will be denied.

HUMPHREYS, J., dissents.

HUMPHREY, J. (dissenting). The sufficiency of the ballot title to proposed Amendment No. 28 is attacked in this suit to enjoin the Secretary of State from certifying it to the election commissioners of the several counties of the state for submission to the voters in the general election in November, 1938.

The majority of the court are of the opinion the ballot title is sufficient and have given their reasons for

sustaining the title in an opinion handed down by one of their number, to which I cannot agree. I do not question their general declaration of law relating to the sufficiency or insufficiency of a ballot title, but I think they have misapplied the law as declared by them in sustaining the ballot title to the proposed Amendment No. 28 or the so-called "Refunding Amendment."

Before a ballot title can be sufficient in the law it must identify the proposed amendment and fairly and completely state its general purpose so as to convey an intelligible idea of the scope and import of the proposed measure, and the ballot title must be free from misleading tendencies and partisan coloring.

The proposed amendment and ballot title have been incorporated verbatim in the majority opinion so I am relieved from incorporating them in this dissenting opinion.

"By reference to Section 9 of the proposed amendment it will be seen that the State absolutely assumes the payment of all valid bonds of Bridge Improvement Districts, Road Improvement Districts, and Road Maintenance Districts, outstanding on January 1st, 1938, whether the districts were organized before or after the passage of Act 11 of the General Assembly of 1927, and to pay 3% interest upon them annually.

"By reference to the ballot title relating to this section it will be seen that it calls the attention of the voters to the authorized exchange of 3% bonds for the valid bonds of Bridge Improvement Districts, Road Improvement Districts, and Road Maintenance Districts, outstanding on January 1, 1938, and that the Commissioner of Revenues is authorized to pay interest at 3% and the average annual maturities of principal on the valid bonds of Bridge Improvement Districts, Road Improvement Districts, and Road Maintenance Districts, outstanding on January 1, 1938, which are not refunded."

The title does not attempt to inform the voters that upon the adoption of the amendment the state assumes millions of dollars represented by outstanding bonds of said districts, even though there may be a failure to refund under the amendment. The failure to do this in

the ballot title has a tendency to mislead and deceive the voters. If the voters knew that upon the failure to refund the bonds the state had, notwithstanding, by the adoption of the amendment, assumed all the valid bonds of Bridge Improvement Districts, Road Improvement Districts, and Road Maintenance Districts, outstanding on January 1, 1938, most of the voters would vote against the amendment, as the state is already staggering under an indebtedness of about one hundred and fifty million dollars. I venture to say that very few voters would vote for Amendment No. 28 if apprised of the fact that when adopted millions upon millions of dollars would be added to the indebtedness of the state. The voters are entitled to this notice in the ballot title and on account of its omission therefrom the ballot title in this respect only tells a small part of the truth and is a snare and a trap to inveigle voters into voting for the amendment. There is little chance to refund bonds which bear a high rate of interest with 3 per cent. bonds, so I think the motivating purpose and scope of Amendment No. 28 is to get the state to assume these additional millions of dollars issued by said improvement districts, not connected with or related to the general highway system of the state. Many of the district bonds which the state will assume if the amendment is adopted were issued to improve streets, driveways, avenues and boulevards in, through, and around privately owned suburban property and such bonds should not be unloaded on the state unless the voters are given full and complete notice that that was the real purpose and scope of the amendment.

If I am correct in concluding from the face of Amendment No. 28 that its general purpose and scope is to unload millions of dollars of debt of private individuals upon the state, then the entire ballot title is not only a snare and a trap to deceive the voters of the state, but it is colorable and partisan and should be condemned under the declarations of law announced in the majority opinion.

But aside from this specific arraignment of the ballot title, I think it insufficient by not pointing out to the voters that Amendment No. 28, if adopted, will deprive

the state of funds with which to maintain her highway system and will practically eliminate or destroy the turnback fund to the counties or so reduce both funds that the fund received will be inadequate to maintain the roads already built and inadequate to build any farm to market roads of consequence, and also defective in that the Legislature cannot reduce the gasoline tax or automobile license tax until the last bond is paid. Not only until the bonds that are not outstanding, but also until the millions of dollars which the state assumes under the amendment are paid.

Many other such iniquities might be pointed out in proposed Amendment No. 28 of which no notice is given to the voters by the ballot title, but I think, perhaps, I have said enough to show some of my reasons for dissenting from the views of my associates in holding that the ballot title meets the requirements of the law announced in their opinion.

I might mention the fact that as the law now stands the state is immune from suits without her consent and this proposed amendment surrenders that sovereign right in advance and permits suits against the state both in state and federal courts. This surrender of the sovereign immunities of the state is not made clear in the title.

The proposed amendment also makes the Revenue Commissioner a constitutional officer and authorizes him to pay his own salary, to employ all the help he desires and fix their salary and pay them without the necessity of an appropriation unless restricted by the Legislature, and the ballot title does not so inform the voters. This is a departure from the law as it exists and the voters are certainly entitled to notice of this fact before the ballot title would be sufficient under the law.

After a careful reading of the proposed amendment and the ballot title attached thereto, I have concluded the ballot title does not fairly state the general purpose of the proposed amendment so as to give an intelligible idea of its scope and import, and that the title is misleading and contains partisan coloring. The ballot title is very adroitly drawn so as to emphasize the good fea-

952

tures of the proposed amendment and minimize the iniquities in it. The skillful hand of a Philadelphia lawyer, as it were, in drafting the title, completely camouflaged the scope and purpose of the proposed amendment in many respects. As stated before, I think it can be clearly seen that the main purpose and scope of the amendment is to unload private debts of individuals, running into millions of dollars on the state when it is already carrying a burden of about one hundred and fifty million dollars that is causing the citizens of the state to pay exorbitant prices for gasoline and automobile licenses.

It seems to me that this is the bug under the chip which is hidden from the voters by omissions heretofore set out in the ballot title.