JOHNSON *v.* HALL, SECY. OF STATE.

5-1732                                      316 S. W. 2d 194

Opinion delivered September 29, 1958.

*Joe C. Barrett, J. Club Barton, Pat Mehaffy, Ned A. Stewart, Edward L. Westbrook, Edward L. Wright,* for plaintiff.

*Bruce Bennett, Attorney General,* for defendant; *Pope, Pratt & Shamburger,* by *Walter L. Pope,* of counsel for defendant.

CARLETON HARRIS, Chief Justice. This is an original action questioning the sufficiency of the ballot title of proposed constitutional amendment No. 51, which bears the popular name, "Trainmen Crew Amendment."[1] The ballot title for the proposed amendment, and which is under attack, is as follows: "An Amendment Prohibiting Operation of Trains with Unsafe and Inadequate Crews." Plaintiff contends that the ballot title is defective for the following reasons:

## I.

The ballot title of the petition is defective and insufficient in that it does not convey a complete and intelligent idea of the scope and import of the proposed amendment.

---

[1] The proposed act provides as follows:

Section 1. The practice of operating high speed diesel trains and locomotives over the railroads in this state with inadequate crews creates undue hazards, jeopardizing and imperiling life and property, and is detrimental to the safety and welfare of the people and contrary to the public policy of this state.

Section 2. Any railroad company, officer of court, or any other person or corporation owning or operating any railroad line or lines in this state, whose line or lines are more than one hundred miles in length, engaged in the hauling of passengers, shall equip any of its said passenger trains consisting of two or more cars or more with a crew consisting of not less than an engineer, a fireman, a conductor, a porter, and a flagman or brakeman.

Section 3. Any railroad company, officer of court, or any other person or corporation owning or operating any railroad line or lines in this state, whose line or lines are more than one hundred miles in length, engaged in the hauling of freight, shall equip any of its said freight trains consisting of twenty or more with a crew consisting of not less than an engineer, a fireman, a conductor, a flagman, and two brakemen.

Section 4. Any railroad company or corporation owning or operating any railroad line or lines in this state, whose line or lines are more than one hundred miles in length, where switching, pushing or transferring of cars are made across public crossings within this state shall operate their switch crews with not less than an engineer, a fireman, a foreman and three helpers, regardless of any modern safety device.

## II.

The ballot title is misleading in that it conveys a false idea as to the meaning and effect of the proposed amendment.

## III.

The ballot title omits the true nature and effect of the proposed amendment and contains partisan coloring.

The purpose of this amendment is to write into the constitution, provisions substantially similar to Act 116 of the General Assembly of 1907, Act 298 of the General Assembly of 1909, and Act 67 of the General Assembly of 1913.[2] These acts have been generally labeled the "Full Crew Laws."

This Court has had occasion, in several instances, to lay down rules governing the sufficiency of a ballot title. One such case is that of *Westbrook* v. *McDonald*, 184 Ark. 740, 43 S. W. 2d 356. There, the Court, quoting from a Massachusetts case, said that "* * * the ballot title should be complete enough to convey an intelligible idea, and scope and import, of the proposed law, and that it ought to be free from any misleading tendency, whether of amplification, of omission, or of fallacy, and that it must contain no partisan coloring. * * *" Inasmuch as the instant proposed ballot title obviously fails to meet the last requirement (that it must contain no partisan coloring), we deem it unnecessary to enter into a discussion of the sufficiency of the proposed title in other respects.

---

[2] There are some differences in the proposed amendment and the provisions of these acts. For instance, Act 298 of 1909, dealing with passenger trains, provides that the act shall apply to all trains with as many as three cars. The proposed amendment, as will be noted in Footnote 1, changes this to trains consisting of two or more cars. Act 116 of 1907, dealing with freight trains, provides for a crew consisting of an engineer, fireman, conductor, and three brakemen. The proposed amendment provides for an engineer, fireman, conductor, a flagman, and two brakemen. Act 116 applies to all railroad companies whose lines are more than fifty miles in length in this state, and where the train shall consist of as many as twenty-five cars. The proposed amendment applies to railroads who operate lines in this state of more than one hundred miles, and where such trains consist of as many as twenty cars.

Let us remember that the voter, getting ready to cast his ballot in the polling booth, will see only the popular name, and the title of the proposed amendment. Neither the body of the amendment, nor any of its provisions, appear on the ballot. The popular name herein used, "Trainmen Crew Amendment," would appear to have no effect upon the voter's thinking, one way or the other, and certainly it conveys no information as to what the proposal contains. Accordingly, the voter who has not previously read the proposed amendment will derive all of his information from the ballot title, "An Amendment Prohibiting Operation of Trains with Unsafe and Inadequate Crews." We think it can safely be said that all citizens are against the operation of trains that do not carry sufficient crews to reasonably assure safety. We cannot conceive that anyone would vote the contrary of this proposition, *viz*, to *permit* the operation of trains with unsafe and inadequate crews. The amendment itself seeks to declare that to operate trains with inadequate crews, (meaning, of course, a crew less than that provided in the act), "is detrimental to the safety and welfare of the people. * * *" But there has been no prior determination that this assertion is always true. Actually, this is a fact question, depending upon the circumstances in each case. Such reasoning is in the nature of "begging the question," which is defined as "founding a conclusion on a basis that needs to be proved as much as the conclusion itself." Here, the voter is urged to support a measure which provides for a particular crew in the operation of trains, because to operate with a smaller crew is, according to the ballot title, "unsafe and inadequate" — but the "unsafe and inadequate" remains to be proved. As was stated in *Bradley* v. *Hall*, 220 Ark. 925, 251 S. W. 2d 470, "In studying his ballot, the voter is not bound by the rule of *caveat emptor*. He is entitled to form his own conclusions, not to have them presented to him ready-made."

As previously stated, other alleged deficiencies in the proposed title need not be discussed, since this title so obviously contains strong partisan coloring, and con-

sequently, fails to meet the test of sufficiency heretofore established by this Court.

Accordingly, plaintiff's petition for injunction is granted.