McDONALD v. BRYANT, SECRETARY OF STATE.

5-3435               381 S. W. 2d 736

Opinion delivered September 14, 1964.

*Wright, Lindsey, Jennings, Lester & Shults,* for Petitioners.

*Bruce Bennett,* Attorney General, by *Jack L. Lessenberry,* Chief Assistant Atty. Gen. and *John P. Gill,* Asst. Atty Gen., for appellee.

Ed F. McFaddin, Associate Justice. This is an original action[1] by citizens and taxpayers against the Secretary of State, and is an attack on both the popular name and the ballot title of proposed Constitutional Amendment No. 55. Prior to July 10, 1964, a petition to initiate proposed Constitutional Amendment No. 55 was filed with the defendant as Secretary of State. The Attorney General—acting under the provisions of Ark. Stat. Ann. § 2-208 (Repl. 1956)—had approved the popular name and the ballot title. See *Washburn* v. *Hall,* 225 Ark. 868, 286 S. W. 2d 494. On July 10, 1964, the Secretary of State advised the sponsors of proposed Amendment No. 55 that the necessary valid signatures were present and that both the popular name and the ballot title were legally sufficient. The proposed amendment is now in process of publication and will be submitted to the voters at the 1964 General Election unless litigation prevents it. On August 13, 1964, the plaintiffs filed this proceeding, and prayed that this Court enjoin the defendant Secretary of State from certifying the proposed Amendment No. 55 to the State Board of Election Commissioners.

It is conceded by all parties that there is no necessity for the appointment of a Master, under Rule 17c of this Court; and we are asked to decide the case on the pleadings and briefs. Plaintiffs preface their argument with the following paragraph, which we approve:

"Since the popular name and ballot title of the petition are the only portions of the proposal which appear on the ballot, *Westbrook* v. *McDonald,* 184 Ark. 740, 43 S. W. 2d 356 (1931), the proponent owes a duty to the electorate to draft a popular name and ballot title which is nonpartisan, descriptive of the amendment, free from misleading words and phrases, and, generally speaking, one which is simply a fair representation of his proposal. *Johnson* v. *Hall,* 229 Ark. 400, 316 S. W. 2d 194 (1958)."

---

[1] Section 16 of Constitutional Amendment No. 7 says in part: "The sufficiency of all state-wide petitions shall be decided in the first instance by the Secretary of State, subject to review by the Supreme Court of the State, which shall have original and exclusive jurisdiction over all such causes.". Section 17 of the Amendment No. 7 says in part: "If the sufficiency of any petition is challenged such cause shall be a preference cause and shall be tried at once . . ."

1. *The Popular Name.* The popular name[2] of the proposed Amendment No. 55 is: "GARLAND COUNTY LAWFUL WAGERING AMENDMENT." The petitioners' attack on this popular name is summarized:

"The popular name of the petition is misleading in that it contains partisan coloring, superfluous words designed to solicit votes, and conveys a false idea as to the meaning and effect of the proposed act."

We have several cases involving attacks on the popular name of proposed measures. Some of them are: *Pafford* v. *Hall,* 217 Ark. 734, 233 S. W. 2d 72; *Hope* v. *Hall,* 229 Ark. 407, 316 S. W. 2d 199; *Moore* v. *Hall,* 229 Ark. 411, 316 S. W. 2d 207; and *Leigh* v. *Hall,* 232 Ark. 558, 339 S. W. 2d 104. In the light of our cases we proceed to examine the popular name of the proposed Amendment No. 55. It is claimed that the word "lawful" is misleading and is a coloring designed to solicit votes for the amendment which proposes to legalize gambling in Garland County. Also, it is claimed that the word "wagering" is a softening of the real word "gambling," or a "sugar-coating of the pill." We find no substantial merit in the plaintiffs' attack against the popular name here involved. The amendment proposes to legalize gambling in Garland County. The words, "wagering," "betting," and "gambling," are practically synonymous, and the terms are so used in common parlance, in dictionary and legal definitions, and in statutory and constitutional enactments.

Webster's New Third International Dictionary says of wagering: "Relating to the act of one who wagers: betting . . ."; and of betting the same authority says: "To stake (money) on the outcome of an issue or the performance of a contest (betting $2 on the race); (betting $100 on the election)"; and of gambling the same authority says: "The act or practice of betting: the act of playing a game and consciously risking something on an uncertain event: wagering." Thus it will be observed that wagering and betting are snyonymous terms with gambling.

---

[2] Ark. Stat. Ann. § 2-208 (Repl. 1956) provides for a popular name. See *Pafford* v. *Hall,* 217 Ark. 734, 233 S. W. 2d 72.

Black's Law Dictionary has these definitions:

"WAGER: A contract by which two or more parties agree that a certain sum of money or other thing shall be paid or delivered to one of them or that they shall gain or lose on the happening of an uncertain event or upon the ascertainment of a fact in dispute, where the parties have no interest in the event except that arising from the possibility of such gain or loss."

"BET. An agreement between two or more persons that a sum of money or other valuable thing, to which all jointly contribute, shall become the sole property of one or some of them on the happening in the future of an event at present uncertain, or according as a question disputed between them is settled in one way or the other."

"GAMBLE. To play, or game, for money or other stake; hence to stake money or other thing of value on an uncertain event."

The United States Government by U.S.C.A. Title 26 § 3285 (Internal Revenue Code of 1939) has a federal statute which levies a "tax on wagers," that is a tax on betting; so wagering and betting are synonymous terms in the federal statute. Likewise, Arkansas Constitutional Amendment No. 46 provides: "Horse racing and pari mutuel *wagering* thereon shall be lawful in Hot Springs, Garland County, and shall be regulated by the General Assembly." (Italics supplied.) The word *"wagering"* means *"betting"* in the Arkansas Constitutional Amendment.

So when the word "wagering" was used as a popular name for the proposed Amendment No. 55, the framers of the popular name were using a word that was definitely defined in the dictionary, definitely determined in the cases, and previously used with a definite meaning in both State and Federal enactments. There are scores of cases which hold that "betting" and "wagering" are all forms of gambling. Some of them are: *Lucas* v. *Harper,* 24 Ohio State 328; *Somers* v. *State,* 37 Tenn. 438; *Thornhill* v. *O'Rear* (Ala.), 19 So. 382; *Carpenter* v. *Beal-McDonnell & Co.,* 222 F. 453; *5-Spot Short*

*Range* v. *Rinehart* (Ohio), 10 N. E. 2d 450; *U. S.* v. *Nadler,* 105 F. Supp. 918; *Rahke* v. *U. S.,* 180 F. Supp. 576.

We have found no case, and learned counsel for petitioners have cited us to none, that makes any sound distinction between wagering and betting as forms of gambling. We hold against the petitioners in their attack on the popular name of Amendment No. 55.

II. *Ballot Title.* The ballot title of the proposed Amendment No. 55 is as follows:

"AN AMENDMENT MAKING GAMES OF CHANCE AND WAGERING THEREON LAWFUL IN ESTABLISHMENTS IN GARLAND COUNTY, ARKANSAS, LICENSED PURSUANT TO THIS AMENDMENT IF APPROVED BY A MAJORITY OF THE LEGAL VOTERS OF GARLAND COUNTY, ARKANSAS, VOTING ON THE QUESTION BY VOTE ON THIS AMENDMENT OR AT A SPECIAL LOCAL OPTION ELECTION; CREATING THE ARKANSAS GAMING CONTROL BOARD TO ADMINISTER AND ENFORCE THE PROVISIONS OF THIS AMENDMENT AND TO REGULATE WAGERING ACTIVITIES PERMITTED HEREUNDER, SAID BOARD TO CONSIST OF 5 MEMBERS APPOINTED BY THE GOVERNOR, AND PRESCRIBING THE TERMS, QUALIFICATIONS, POWERS, DUTIES, FUNCTIONS AND AUTHORITY OF THE BOARD; APPOINTING THE ATTORNEY GENERAL OF THE STATE AS THE ATTORNEY FOR THE BOARD; AUTHORIZING THE APPROPRIATION OF FUNDS FOR EXPENSES AND OPERATION OF THE BOARD; PROVIDING FOR HEARINGS BY THE BOARD AND APPEALS THEREFROM; PROVIDING FOR THE LICENSING OF WAGERING ESTABLISHMENTS AND FIXING THE MAXIMUM PERMITTED NUMBER; PROVIDING FOR THE ELIGIBILITY AND QUALIFICATIONS OF LICENSEES; RESTRICTING THE LOCATION OF LICENSED ESTABLISHMENTS AND PROVIDING FOR CHANGE OF LOCATION IN

CERTAIN CASES; FIXING THE DURATION OF
LICENSES AND PROVIDING FOR AUTOMATIC
RENEWALS WITH CERTAIN EXCEPTIONS; PRO-
HIBITING TRANSFERS OF LICENSES OR INTER-
ESTS THEREIN WITH CERTAIN EXCEPTIONS;
LEVYING A STATE TAX OF NOT LESS THAN 4%
NOR MORE THAN 5½% OF THE QUARTERLY
GROSS PROFIT FROM WAGERING OF EACH LI-
CENSEE; PROVIDING FOR THE COLLECTION OF
SAID TAXES; PROVIDING FOR STATE LICENSE
FEES AND FIXING THE AMOUNT THEREOF;
AUTHORIZING THE CITY OF HOT SPRINGS AND
THE COUNTY OF GARLAND TO LICENSE AND
TAX LICENSEES AND PROVIDING FOR LIMITS
ON SUCH LICENSE FEES AND TAXES; PRO-
HIBITING PERSONS UNDER 21 FROM PLAYING
OR LOITERING ABOUT OR BEING PERMITTED
TO PLAY OR LOITER ABOUT LICENSED GAMES
OF CHANCE; MAKING CERTAIN LAWS RELAT-
ING TO GAMBLING INAPPLICABLE TO ACTS
PERMITTED BY THIS AMENDMENT; PROVID-
ING THAT SAID AMENDMENT SHALL BE SELF-
EXECUTING.''

Plaintiffs summarize their attack on this ballot title:

''The ballot title of the petition is defective and
insufficient in that it does not convey a complete and
intelligible idea of the scope and import of the proposed
act, is misleading in that it conveys a false idea as to
the meaning and effect of the proposed act, contains par-
tisan coloring, and is designed to solicit votes.''

The proposed Constitutional Amendment has seven-
teen sections and contains more than 3400 words. The
ballot title has approximately 300 words. We have care-
fully compared the ballot title against the text of the
amendment; and we cannot agree with the petitioners
in their attack on the ballot title.[3] We have a number of

---

[3] The Attorney General submitted the following tabulation in sup-
port of his position that the ballot title fully, fairly, and impartially
conveyed an intelligible idea of the scope and import of the proposed
amendment:

| WORDING OF BALLOT TITLE | Reference to Section of Proposed Amendment |
|---|---|
| AN AMENDMENT making games of chance and wagering thereon lawful in establishments in Garland County, Arkansas licensed pursuant to this Amendment if approved by a majority of the legal voters of Garland County, Arkansas, voting on the question by vote on this Amendment or at a special local option election; | "Section 1 |
| "creating the Arkansas Gaming Control Board to administer and enforce the provisions of this Amendment and to regulate wagering activities permitted hereunder, said board to consist of 5 members appointed by the governor, and prescribing the terms, qualifications, powers, duties, functions and authority of the board appointing the attorney general of the state as the attorney for the board; authorizing the appropriation of funds for expenses and operation of the board; providing for hearings by the board and appeals therefrom; | "Section 2 |
| "providing for the licensing of wagering establishments; | "Section 3 |
| "and fixing the maximum permitted number; | "Section 4 |
| "providing for the eligibility and qualifications of licensees; | "Sections 5, 6 & 7 |
| "restricting the location of licensed establishments and providing for change of location in certain cases; | "Section 8 |
| "fixing the duration of licenses and providing for automatic renewals with certain exceptions; | "Section 9 |
| "prohibiting transfers of licenses or interests therein with certain exceptions; | "Section 10 |
| "levying a state tax of not less than 4% nor more than 5½% of the quarterly gross profit from wagering of each licensee; providing for the collection of said taxes; | "Sections 11 & 13 |
| "providing for state license fees and fixing the amount thereof; | "Section 12 |
| "authorizing the city of Hot Springs and the county of Garland to license and tax licensees and providing for limits on such license fees and taxes; | "Section 14 |
| "prohibiting persons under 21 from playing or loitering about or being permitted to play or loiter about licensed games of chance; | "Section 15 |
| "making certain laws relating to gambling inapplicable to acts permitted by this amendment; | "Section 16 |
| "providing that said amendment shall be self-executing." | "Section 17 |

cases involving the ballot title of initiated measures, some of which are: *Westbrook* v. *McDonald*, 184 Ark.

740, 43 S. W. 2d 356, 44 S. W. 2d 331; *Shepard* v. *McDonald,* 189 Ark. 29, 70 S. W. 2d 566; *Walton* v. *McDonald,* 192 Ark. 1155, 97 S. W. 2d 81; *Newton* v. *Hall,* 196 Ark. 929, 120 S. W. 2d 364; *Hogan* v. *Hall,* 198 Ark. 681, 130 S. W. 2d 716; *Sturdy* v. *Hall,* 204 Ark. 785, 164 S. W. 2d 884; and *Bradley* v. *Hall,* 220 Ark. 925, 251 S. W. 2d 470.

In *Bradley* v. *Hall,* 220 Ark. 925, 251 S. W. 2d 470, we said:

"Our decisions upon the sufficiency of ballot titles have been so numerous that the governing principles are precisely familiar. On the other hand, it is not required that the ballot title contain a synopsis of the amendment or statute. *Sturdy* v. *Hall,* 204 Ark. 785, 164 S. W. 2d 884. It is sufficient for the title to be complete enough to convey an intelligible idea of the scope and import of the proposed law. *Westbrook* v. *McDonald,* 184 Ark. 740, 43 S. W. 2d 356, 44 S. W. 2d 332. We have recognized the impossibility of preparing a ballot title that would suit everyone. *Hogan* v. *Hall,* 198 Ark. 681, 130 S. W. 2d 716. Yet, on the other hand, the ballot title must be free from 'any misleading tendency, whether of amplification, of omission, or of fallacy,' and it must not be tinged with partisan coloring. *Walton* v. *McDonald,* 192 Ark. 1155, 97 S. W. 2d 81."

In *Leigh* v. *Hall,* 232 Ark. 558, 339 S. W. 2d 104, Mr. Justice J. Seaborn Holt, after quoting from *Bradley* v. *Hall, supra,* used this language:

". . . a ballot title must be (1) intelligible, (2) honest, and (3) impartial. . . . In the case of *Coleman* v. *Sherrill,* 189 Ark. 843, 75 S. W. 2d 248, we said: '. . . The real objection urged to the title of the act . . . is the fact that it is not sufficiently elaborate. Any other ballot title would be susceptible of the same criticism unless it were in itself a complete abstract of the act which would be impracticable under ordinary conditions.' And further, '. . . it has never been understood that the title of a statute should disclose the details embodied in the act. It is intended simply to indicate the subject to which the statute relates. . . . When the *general subject* is indicated,

no detail matters need be mentioned in the title.' (emphasis supplied) The title of a measure does not have to constitute a synopsis of the measure, *Bradley* v. *Hall, supra.*"

It would unduly prolong this opinion to list and discuss the several specific attacks made on the ballot title of proposed Amendment No. 55. It is not a question of how we individually feel about the merits of the measure: we are concerned only with the legal requirements to allow the measure to be submitted to the voters. It is sufficient to say that we have carefully studied all the arguments advanced by the plaintiffs and conclude that the ballot title of proposed Amendment No. 55 is good against all such attacks.

The petition for injunction is denied.

JOHNSON, J., disqualified.