James L. MASON and Bob LAMB v.
George O. JERNIGAN, Jr., Secretary
of State of the State of Arkansas

76-197                                540 S.W. 2d 851

Opinion delivered September 20, 1976
(In Banc)

[Supplemental Opinion on Denial of Rehearing
delivered October 11, 1976, p. 399.]

Smith, Williams, Friday, Eldredge & Clark, by: *William J. Smith, James W. Moore* and *Robert V. Light,* for petitioners.

*Jim Guy Tucker,* Atty. Gen., by: *Lonnie A. Powers,* Dep. Atty. Gen., for respondents.

*Youngdahl, Larrison & Agee,* for Intervenor, Arkansas State AFL-CIO.

CARLETON HARRIS, Chief Justice. This is an original action. Petitioners, pursuant to Amendment No. 7 to the Arkansas Constitution, on July 9, 1976, filed their petition in this court, seeking to enjoin the Secretary of State from certifying to the State and County Boards of Election Commissioners the ballot title and popular name of a proposed amendment to the Constitution, known as Proposed Amendment No. 59, specifically, a proposed amendment to Amendment No. 34 of our Constitution. It is the contention of petitioners that the popular name given to the proposed amendment is misleading, deceptive, partisan, and obscures the true nature of the content of the amendment. It is also asserted that the ballot title is inadequate and insufficient and is not an impartial nor intelligible description of particular provisions, inasmuch as it distorts or withholds pertinent and vital information concerning the scope and effect of the proposed measure.

The entire amendment[1] is not of great length. The pop-

---

[1]"Amendment No. 34 to the Constitution of Arkansas is amended to read as follows:

Section 1. No person shall be denied employment because of

ular name given the proposal is "Amendment to the 'Rights of Labor' Amendment" and it is contended that the name given is deficient in that it has a tendency to mislead the voter. Petitioners point out that the present constitutional provision (Amendment No. 34), when adopted at the General Election of 1944, bore the popular name "Freedom to Work;" that this is the name that has been generally used in identifying this particular constitutional provision in legal periodicals and press articles, and that the public is familiar with that title. While this is true, the fact remains that the phrase "Right to Work" is only what might be termed a commonplace, or informal identification of the Act. Actually, the official compilation of the laws of Arkansas characterizes Amendment No. 34 as "Rights of Labor," this designation being approved by the Arkansas Statute Revision Commission,[2] which is charged with the duties necessary to the publication of our statutes, and such designation has been used from 1947 to the present time, appearing in like manner in the last (1975) Supplement to the Digest.

---

membership in or affiliation with or resignation from a labor union, or because of refusal to join or affiliate with a labor union; nor shall any corporation or individual or association of any kind enter into any contract, written or oral, to exclude from employment members of a labor union or persons who refuse to join a labor union, or because of resignation from a labor union; nor shall any person against his will be compelled to pay dues to any labor organization as a prerequisite to or condition of employment; provided, however, that the foregoing governmental restrictions shall not apply if all of the following free choices have been made: (a) the employees in an existing collective bargaining unit have had an opportunity to participate in a secret ballot election conducted by an Arkansas state agency and the result of such election is a majority vote to remove the foregoing restrictions for that unit, (b) the affected employer has agreed to an otherwise legal contract provision concerning labor union membership as a condition of employment, and (c) all employees have freedom to participate or not participate in labor union meetings and similar activities.

Section 2. The General Assembly shall have power to enforce this article by appropriate legislation; provided, however, that the Arkansas Department of Labor (or, if there is no Arkansas Department of Labor, such executive department as designated by the Governor) shall have power to establish rules and regulations for the administration of the election provisions of this article, and to conduct such elections."

[2]This Commission is composed of five persons, *viz.*, the Dean of the School of Law of the University of Arkansas, the Attorney General of the State of Arkansas, and three members of the Bar named by the Supreme Court.

The ballot title in question provides as follows:

"An Amendment to Amendment No. 34, 'Rights of Labor.' To the Constitution of Arkansas: To continue those provisions of Amendment No. 34 which prohibit denial of employment because of membership in, affiliation with, resignation from, or refusal to join a labor union, prohibit any contract which denies employment because of membership, refusal to join, or resignation from a labor union, and prohibit compelling of the payment of labor organization dues as a condition of employment; but to provide that the foregoing provisions shall not apply if three conditions are met: (a) Employees in an existing bargaining unit vote by secret ballot majority vote to remove them in an election conducted by an Arkansas State Agency, (b) The affected employer agrees to contract for labor union membership as a condition of employment, and (c) all employees may participate or not participate in labor union meetings and similar activities; to continue the enforcement power of the General Assembly; but to give the Arkansas Department of Labor (or department designated by the Governor) the power to establish rules and regulations for employee elections and to conduct such elections; and for other purposes."

Before discussing the particular points involved, perhaps it would be well to mention the general principles of law applicable to this type of case. In *Fletcher* v. *Bryant*, 243 Ark. 864, 422 S.W. 2d 698, we pointed out that some significance must be given to the fact that the Arkansas Attorney General approved the ballot title, pursuant to Ark. Stat. Ann. § 2-208 (Repl. 1956); in fact, we quoted from a Colorado case[3] (which quoted the language of a California case),[4] to the effect that only in a clear case, should a title so prepared be held insufficient. In *Fletcher,* citing earlier Arkansas cases,[5] this court said:

---

[3]*Say* v. *Baker,* 322 P. 2d 317.

[4]*Epperson* v. *Jordan,* 82 P. 2d 445.

[5]*Coleman* v. *Sherrill,* 189 Ark. 843, 75 S.W. 2d 248; *Armstrong* v. *Sturch,* 235 Ark. 571, 361 S.W. 2d 77.

"In determining the sufficiency of this ballot title, we will keep in mind that *we give a liberal construction* and interpretation of the requirements of Amendment 7 in order to secure its purposes to reserve to the people the right to adopt, reject, approve or disapprove legislation." [Our emphasis]

We added that:

"Actions of electors in seeking to exercise this right must not be thwarted by strict or technical construction." *Reeves* v. *Smith,* 190 Ark. 213, 78 S.W. 2d 72.

Also, in *McDonald* v. *Bryant,* 238 Ark. 338, 381 S.W. 2d 736, it was pointed out that the question is not how court members may individually feel about a measure, but rather whether legal requirements for submission of a measure to the voters have been complied with.

We have said that a popular name (as well as a ballot title) must be free from "catch phrases and slogans which tend to mislead and color the merit of the proposal." *Moore* v. *Hall,* 229 Ark. 411, 316 S.W. 2d 207. We cannot see that the present popular name violates those requirements. There is nothing in the name that suggests approval or disapproval of the subject matter that follows; in fact, it would appear that the name "Rights of Labor" is perhaps more non-partisan than the name "Right to Work," since offhand it can certainly be considered that members of the general public favor the right of persons to work. In *Johnson* v. *Hall,* 229 Ark. 400, 316 S.W. 2d 194, we commented that the popular name there involved, "Trainmen Crew Amendment," would appear to have no effect upon the voters' thinking, one way or the other, *i.e.,* it was completely non-partisan.

This brings us to the ballot title itself. We have said that a ballot title must be "free from 'any misleading tendency, whether of amplification, of omission, or of fallacy,' and it must not be tinged with partisan coloring." *Bradley* v. *Hall,* 220 Ark. 925, 251 S.W. 2d 470. In the litigation before us, it somewhat appears that the attack of the petitioners on the ballot title is really an attack on the amendment itself, as be-

ing deceptive and misleading as to the purpose to be accomplished. Petitioners state:

> "While masquerading as an amendment to Amendment No. 34, the proposal in fact is much more drastic than an outright repeal such as advanced in the aborted 1950 attempt. A repeal would leave the General Assembly with authority to occupy, to the extent its legislative judgment prompted, the area of State sovereignty preserved by Sec. 14(b). The proposed measure would enshrine in our Constitution a rigid formula, beyond the competence of the General Assembly to revise, for the imposition of labor union membership and support on the unwilling workers of Arkansas. ***

> "The elector is first beguiled with the assurance that the very provisions of the Constitution that the proposed Amendment is designed to emasculate will be 'continue(d)', and then reference is made to certain seemingly narrow and unimportant situations in which they 'shall not apply.' The sole purpose of the ballot title is to inform the elector how the proposal would change existing law — change or retention of that law is the choice left to him at the polls. The 'shall not apply' clause is hardly calculated to apprise the voter that adoption of the proposal would repeal existing constitutional prohibitions. ***."

As to the elector being deceived by the fact that there is duplication of the language appearing in the original amendment, it, of course, is true that the original amendment is copied; however, approximately half way through Section 1, the amendment provides that the foregoing restrictions "shall not apply if all of the following free choices have been made." In other words, exceptions are created to the original amendment. In amending statutes, this is generally the procedure followed. Most often, when a statute is amended by the General Assembly, it reiterates all the language of the statute that is retained and simply inserts the changes that are made. Actually, if the original language of Amendment No. 34 is to be retained as a part of the proposed constitutional amendment, such language, of course, must necessarily be placed in the amendment. We do not understand the argument relative

to "shall not apply" referring to "certain seemingly narrow and unimportant situations" for the exceptions are certainly the "meat" of the proposal; no language is pointed out by petitioners wherein the amendment indicates that these changes are only "minor." Of course, the fact that the provisions of Amendment No. 34, presently in effect, would not be applicable to every situation that might arise if proposed Amendment No. 59 is adopted could not, we think, be more clearly made known, than by using the language that under certain conditions, those provisions "shall not apply." There is complaint that the ballot title does not mention "union shop" and "agency shop," but those particular terms do not appear in proposed Amendment No. 59.[6] Let it be remembered that the purpose of a ballot title is *not to "interpret" the amendment,* but only to summarize adequately the provisions of such amendment; nor is it our function in the present litigation to interpret the amendment itself.

The defects which have invalidated some ballot titles in the past as inadequate, partisan, and misleading are illustrated by several cases. In *Johnson* v. *Hall, supra,* the ballot title provided "An Amendment Prohibiting Operation of Trains with Unsafe and Inadequate Crews." In disapproving this title, we said:

"We think it can safely be said that all citizens are against the operation of trains that do not carry sufficient crews to reasonably assure safety. We cannot conceive that anyone would vote the contrary of this proposition, *viz.,* to *permit* the operation of trains with unsafe and inadequate crews. The amendment itself seeks to declare that to operate trains with inadequate crews, (meaning, of course, a crew less than that provided in the act), ' is detrimental to the safety and welfare of the people. * * *' But there has been no prior determination that this assertion is always true. Actually, this is a fact question, depending upon the circumstances in

---

[6]In *Moore* v. *Hall, supra,* cited by petitioners, we held a ballot title defective because, says petitioners, "while it was aimed at prohibiting 'featherbedding,' the ballot did not mention that widely understood term." We simply point out that in that proposed amendment, Section 1 provided "Practices known as 'featherbedding' are contrary to the public policy of this state."

each case. Such reasoning is in the nature of 'begging the question,' which is defined as 'founding a conclusion on a basis that needs to be proved as much as the conclusion itself.' Here, the voter is urged to support a measure which provides for a particular crew in the operation of trains, because to operate with a smaller crew is, according to the ballot title, 'unsafe and inadequate' — but the 'unsafe and inadequate' remains to be proved."

In another *Johnson* v. *Hall,* found at 229 Ark. 404, 316 S.W. 2d 197, the ballot title for proposed constitutional Amendment No. 52 was rejected as inadequate, the court stating:

"The ballot title here — An amendment to require adequate safety devices at all public railroad crossings, — obviously, we think, would convey to the voter, or carry the presumption to him, that at present the railroads were not using adequate safety devices at all public crossings and that our present statutes do not provide adequate protection for the highway traveler. Certainly all good citizens would vote for adequate protection at public crossings. There is nothing in this ballot title that tells the voter that this amendment would require all railroads in Arkansas to install and maintain at each public crossing or street electrically controlled warning signals, and in addition electrically controlled boards or gates on each side of the public railroad crossings, without any regard to the distance that said crossing might be from a source of electric power, and that such a requirement would place an additional burden of heavy expense on the railroads of millions of dollars to install and maintain such devices, at an estimated 3,600 public railroad crossings in Arkansas, whether the daily traffic count over such crossings amounted to a dozen vehicles or thousands."

Again, in *Walton* v. *McDonald, Secretary of State,* 192 Ark. 1155, 97 S.W. 2d 81, a proposed constitutional amendment contained forty-nine sections and provided, in brief, levy of a permanent general sales tax of two per cent, and further provided an appropriation of thirty-three and one-third per

cent of the gross proceeds of a tax on horse and dog racing, these taxes to be levied for the benefit of the old age and pension fund. In rejecting the title, this court, in an opinion by Justice Frank Smith, said:

> "The title carries an appeal to all humane instincts. Few would object to some provision being made for the support of the aged and blind; but to levy a general sales tax of two per cent, for that, or any other purpose, is a different question altogether, and would furnish the elector, however generous his impulses might be, serious ground for reflection if that information were imparted to him by the title of the question upon which he exercised his right of suffrage. Especially would this be true if he were also advised that the act appropriates to its purposes thirty-three and one-third per cent. of the gross proceeds of the tax on horse and dog racing, which amounted, during the last biennium, to the gross sum of $379,059.73."

How does the ballot title of proposed Amendment No. 59 comport with the standards, earlier mentioned, which must be followed if a ballot title is to be considered proper and adequate? In other words, is it "free from any misleading tendency, whether of amplification, of omission, or a fallacy, and not tinged with partisan coloring?" Let us compare the amendment and the ballot title.

| PROPOSED AMENDMENT | BALLOT TITLE |
|---|---|
| provided, however, that the foregoing governmental restrictions shall not apply if all of the following free choices have been made: | but to provide that the foregoing provisions shall not apply if three conditions are met: |
| (a) the employees in an existing collective bargaining unit have had an opportunity to participate in a secret ballot election conducted by an Arkansas state agency and the result of such election is a majority vote to remove the foregoing restrictions for that unit. | (a) employees in an existing bargaining unit vote by secret ballot majority vote to remove them in an election conducted by an Arkansas state agency, |

| | |
|---|---|
| (b) the affected employer has agreed to an otherwise legal contract provision concerning labor union membership as a condition of employment. | (b) the affected employer agrees to contract for labor union membership as a condition of employment, |
| and (c) all employees have freedom to participate or not participate in labor union meetings or similar activities. | and (c) all employees may participate or not participate in labor union meetings and similar activities; |

It is apparent that this abstract or summation is adequate and sufficient to summarize the changes proposed to Amendment No. 34 by proposed Amendment No. 59,[7] and is not misleading nor tinged with partisan coloring.

It follows that the petition seeking to enjoin the Secretary of State from certifying to the State and County Boards of Election Commissioners the ballot title and popular name of this proposed amendment, should be denied.

It is so ordered.

FOGLEMAN, BYRD, and ROY, JJ., dissent.

CONLEY BYRD, Justice, dissenting. I can see no reason to depart from our prior rulings upon the sufficiency of ballot titles to Initiative and Referendum petitions. In *Bradley* v. *Hall, Secretary of State,* 220 Ark. 925, 251 S.W. 2d 470 (1952), we had before us a proposal carrying the popular name "Modern Consumer Credit Amendment." In holding both the popular title and the ballot title deficient, we stated the simple basic rules for determining the sufficiency or insufficiency of the ballot title to an initiated proposal in this language:

> "Our decisions upon the sufficiency of ballot titles have been so numerous that the governing principles are perfectly familiar. On the one hand, it is not required that the ballot title contain a synopsis of the amendment or statute. *Sturdy* v. *Hall,* 204 Ark. 785, 164 S.W. 2d 884.

---

[7]The other provisions are similarly summarized and reflect the full content of the measure.

It is sufficient for the title to be complete enough to convey an intelligible idea of the scope and import of the proposed law. *Westbrook* v. *McDonald*, 184 Ark. 740, 43 S.W. 2d 356, 44 S.W. 2d 331. We have recognized the impossibility of preparing a ballot title that would suit every one. *Hogan* v. *Hall*, 198 Ark. 681, 130 S.W. 2d 716. Yet, on the other hand, the ballot title must be free from 'any misleading tendency, whether of amplification, of omission, or of fallacy, and it must not be tinged with partisan coloring, *Walton* v. *McDonald*, 192 Ark. 1155, 97 S.W. 2d 81.

It is evident that before determining the sufficiency of the present ballot title we must first ascertain what changes in the law would be brought about by the adoption of the proposed amendment. For the elector, in voting upon a constitutional amendment, is simply making a choice between retention of the existing law and the substitution of something new. It is the function of the ballot title to provide information concerning the choice that he is called upon to make. Hence the adequacy of the title is directly related to the degree to which it enlightens the voter with reference to the changes that he is given the opportunity of approving."

To determine the scope and import of the proposed amendment we must first determine what changes would be brought about by the proposal. Since the proposal here involved re-enacts both sections of the "Freedom to Work" amendment but amends each section with a proviso, that portion of the proposal before us which contains the language of the Freedom to Work amendment is hereinafter set out in ordinary type and the provisos added by the sponsors of the proposal are italicized. The proposed amendment sponsored by the Labor Union provides:

"Be It Enacted by the People of the State of Arkansas:

Amendment No. 34 to the Constitution of Arkansas is amended to read as follows:

Section 1. No person shall be denied employment because of membership in or affiliation with or resigna-

tion from a labor union, or because of refusal to join or affiliate with a labor union; nor shall any corporation or individual or association of any kind enter into any contract, written or oral, to exclude from employment members of a labor union or persons who refuse to join a labor union, or because of resignation from a labor union; nor shall any person against his will be compelled to pay dues to any labor organization as a prerequisite to or condition of employment; *provided, however, that the foregoing governmental restrictions shall not apply if all of the following free choices have been made: (a) the employees in an existing collective bargaining unit have had an opportunity to participate in a secret ballot election conducted by an Arkansas State agency and the result of such election is a majority vote to remove the foregoing restrictions for that unit, (b) the affected employer has agreed to an otherwise legal contract provision concerning labor union membership as a condition of employment, and (c) all employees have freedom to participate or not participate in labor union meetings and similar activities.*

Section 2. The General Assembly shall have power to enforce this article by appropriate legislation; *provided, however, that the Arkansas Department of Labor (or, if there is no Arkansas Department of Labor, such executive department as designated by the Governor) shall have power to establish rules and regulations for the administration of the election provisions of this article, and to conduct such elections.* "

When the "proviso" in Section 1 is reduced to ordinary language it amends the Freedom to Work Law to permit a labor union when certified as a bargaining unit by the Arkansas Department of Labor to compel an employer to discriminate against persons who refuse to join a union. Included in the amendment is a deceptive requirement that "all employees have freedom to participate . . . in labor union meetings" but of course after the employer is forced to hire only union members, the provision becomes nothing more than window dressing because federal law now guarantees each union member such rights.

The proviso in Section 2 of the labor union proposal is still more deceptive. It abolishes the usual checks and balances of the three departments of government — *i.e.* the

executive, the legislative, and the judicial — and gives to the governor through the Department of Labor the right to legislate the ground rules for determining what shall be a bargaining unit, how and when the employee elections shall be held and the sole power to determine the outcome of the elections.

Now in determining whether the ballot title before us has fulfilled its function of providing the voter with the information concerning the choice that he is called upon to make, we must look to the ballot title which provides:

"AN AMENDMENT TO AMENDMENT NO. 34, "RIGHTS OF LABOR." TO THE CONSTITUTION OF ARKANSAS: TO CONTINUE THOSE PROVISIONS OF AMENDMENT NO. 34 WHICH PROHIBIT DENIAL OF EMPLOYMENT BECAUSE OF MEMBERSHIP IN, AFFILIATION WITH, RESIGNATION FROM, OR REFUSAL TO JOIN A LABOR UNION, PROHIBIT ANY CONTRACT WHICH DENIES EMPLOYMENT BECAUSE OF MEMBERSHIP IN, REFUSAL TO JOIN, OR RESIGNATION FROM A LABOR UNION, AND PROHIBIT COMPELLING OF THE PAYMENT OF LABOR ORGANIZATION DUES AS A CONDITION OF EMPLOYMENT; BUT TO PROVIDE THAT THE FOREGOING PROVISIONS SHALL NOT APPLY IF THREE CONDITIONS ARE MET: (a) EMPLOYEES IN AN EXISTING BARGAINING UNIT VOTE BY SECRET BALLOT MAJORITY VOTE TO REMOVE THEM IN AN ELECTION CONDUCTED BY AN ARKANSAS STATE AGENCY, (b) THE AFFECTED EMPLOYER AGREES TO CONTRACT FOR LABOR UNION MEMBERSHIP AS A CONDITION OF EMPLOYMENT, AND (c) ALL EMPLOYEES MAY PARTICIPATE OR NOT PARTICIPATE IN LABOR UNION MEETINGS AND SIMILAR ACTIVITIES; TO CONTINUE THE ENFORCEMENT POWER OF THE GENERAL ASSEMBLY; BUT TO GIVE THE ARKANSAS DEPARTMENT OF LABOR (OR DEPARTMENT

DESIGNATED BY THE GOVERNOR) THE POWER TO ESTABLISH RULES AND REGULATIONS FOR EMPLOYEE ELECTIONS AND TO CONDUCT SUCH ELECTIONS: AND FOR OTHER PURPOSES."

While I consider the whole ballot title deceptive, for purposes of demostration, I will particularize with reference to the latter portion of the ballot title which provides:

". . . to continue, the enforcement power of the General Assembly, but to give the Arkansas Department of Labor (or Department designated by the Governor) the power to establish rules and regulations for employee elections and to conduct such election; and for other purposes."

No where in the ballot title can it be determined that the General Assembly has no control over what shall constitute a bargaining unit. No where does it appear that the General Assembly cannot provide for a contest of the results of an election held by the Department of Labor. Yet the fair implication of the ballot title is to the contrary. With respect to a similar implication in *Bradley* v. *Hall, Secretary of State,* 220 Ark. 920, 929, 251 S.W. 2d 470, 472 (1952), we said:

"The ballot title itself is also misleading. It states that the amendment will empower the General Assembly 'to authorize, define, and limit charges, in addition to interest.' The word 'authorize is taken from the measure itself and is accurately used; as we have seen, the amendment does authorize charges in addition to interest. But the term is not used alone; the phrase is 'authorize, define, and limit.' The fair implication of the phrase as a whole is that the legislature is to be given new and additional power to curb charges in addition to interest. Yet this implication has a manifest tendency to mislead, since the true purpose of the amendment is pretty nearly the exact opposite."

While I will not address the matter in detail, I only ask how, a voter, in making his choice, could realize that the scope and import of the proposal is so great that "closed"

shops in governmental agencies (*i.e.* police departments, fire departments, schools, etc.) could result.

Since I believe that the law should be applied alike fairly and impartially to all litigants and all proposals, I can find no good reason not to apply simple test of our former decisions to the ballot title before us. It must be remembered that the citizens of this State have consistently placed restrictions upon the making of amendments to the constitution whether it be a proposal submitted by the General Assembly pursuant to Article 19 § 22 or by a petition of the electorate pursuant to Amendment No. 7.

For the reasons stated, I respectfully dissent.

FOGLEMAN, and ROY, JJ., join in this dissent.

Supplemental Opinion on Rehearing delivered
October 11, 1976

Rehearing denied.

CARLETON HARRIS, Chief Justice. In their petition for rehearing, petitioners contend that this Court's decision is based on a sentence appearing in the opinion, taken from the holding in *Fletcher* v. *Bryant,* 243 Ark. 864, 422 S.W. 2d 698, *viz.,* "and that where reasonable minds might differ as to the sufficiency of the title, same should be held sufficient."

The petitioners are in error as to the basis of our holding in the present litigation. In fact, the quoted language might even be considered *dictum*[1] and, at any rate, means so little to the decision that we herewith amend the opinion by striking said language from same.

The crux of our holding, emphasized throughout the opinion, is that the summation in the ballot title is adequate and sufficient to summarize the changes proposed, is not misleading, and is not tinged with partisan coloring. As stated in *Hoban* v. *Hall,* 229 Ark. 416, 316 S.W. 2d 185, it is our duty to approve the ballot title where it *"represents an impartial summa-*

---

[1]Petitioners state that this sentence, in *Fletcher,* was *dictum.*

*tion of the measure."* See also *Moore* v. *Hall,* 229 Ark. 411, 316 S.W. 2d 207, and *Bradley* v. *Hall,* 220 Ark. 925, 251 S.W. 2d 470. That is our finding in this litigation.

Rehearing denied.