Oscar Stilley Attorney at Law Central Mall Plaza Suite 516 5111 Rogers Avenue Fort Smith, AR 72903-2041
Dear Mr. Stilley:
This is in response to your request for certification, pursuant to A.C.A. § 7-9-107 (Repl. 1993), of the following popular name and ballot title for a proposed amendment to the Arkansas Constitution:
 POPULAR NAME PRISON REFORM AMENDMENT BALLOT TITLE AN AMENDMENT TO THE ARKANSAS CONSTITUTION PROHIBITING THE EARLY RELEASE OF ADULT INMATES IN ARKANSAS STATE PRISONS, EXCEPT PURSUANT TO THE TERMS OF THIS AMENDMENT, OR PURSUANT TO EXECUTIVE CLEMENCY OR PARDON; AUTHORIZING THE EMPLOYMENT OF PRISONERS AT PRODUCTIVE LABOR BY THE ARKANSAS DEPARTMENT OF CORRECTION, A STATE AGENCY, OR THE ARKANSAS CORRECTION CORPORATION, (ACC) A PRIVATE FOR PROFIT CORPORATION ORGANIZED FOR THE PURPOSE OF EMPLOYING PRISONERS AND TEACHING THRIFT, INDUSTRY, AND RESPECT FOR THE PERSON AND PROPERTY OF OTHERS TO PRISON INMATES; AUTHORIZING THE EMPLOYMENT OF PRISONERS BY OTHER ENTITIES IF THE ACC FAILS TO PROVIDE SECURITY, HOUSING, AND EMPLOYMENT FOR SUBSTANTIALLY ALL QUALIFIED EMPLOYABLE INMATES, AT NO COST TO THE TAXPAYERS, WITHIN 3 YEARS OF OPERATIONS; CREATING THE POSITION OF COMMISSIONER OF CORRECTION, TO BE FILLED BY NON-PARTISAN ELECTION AS SOON AS REASONABLY POSSIBLE AFTER PASSAGE OF THE AMENDMENT, AND AT EACH REGULARLY SCHEDULED STATEWIDE ELECTION THEREAFTER; PROVIDING THAT THE SOLE COMPENSATION OF SUCH COMMISSIONER OF CORRECTION SHALL BE 3% OF THE NET REDUCTION OF THE COSTS OF THE ARKANSAS DEPARTMENT OF CORRECTION BELOW COSTS IN THE PREVIOUS FISCAL YEAR, PLUS 3/10TH OF 1% OF THE REDUCTION OF THE COST OF THE OPERATION OF THE ARKANSAS DEPARTMENT OF CORRECTION, FROM THE EXPENDITURES MADE IN FISCAL YEAR 1999, PLUS 10% OF ANY NET PROFITS OF THE ARKANSAS DEPARTMENT OF CORRECTION; DEFINING "NET PROFITS" TO MEAN ALL PROFITS FROM CORRECTIONAL INDUSTRIES AND OPERATIONS, WHERE NO PAYMENTS FROM THE ARKANSAS STATE TREASURY, EXCEPT PAYMENTS MADE FOR GOODS SOLD OR SERVICES RENDERED, ARE RETAINED FOR PRISON OPERATIONS; PROVIDING THAT INMATES MAY NOT EARN PAROLE ELIGIBILITY UNLESS THE INMATE BY PRODUCTIVE LABOR PAYS THE FULL COSTS OF THEIR INCARCERATION; LIMITING PAROLE ELIGIBILITY TO ONE DAY OF ELIGIBILITY FOR ONE DAY OF TIME SERVED; PROVIDING THAT NO INMATE MAY EARN GOOD TIME TOWARD EARLY RELEASE UNLESS SUCH INMATE CONTRACTS WITH THE ACC, OR OTHER AUTHORIZED ENTITY, TO WORK OFF PRISON GROUNDS; PROVIDING THAT INMATES CONTRACTING WITH SUCH AUTHORIZED ENTITIES MAY BE ENTITLED TO GOOD TIME CREDIT NOT TO EXCEED 3 DAYS FOR EACH DAY SERVED, WHICH MAY IN APPROPRIATE CASES BE CALCULATED CUMULATIVELY TO PAROLE CREDITS; PROVIDING THAT INMATES WHO BY PRODUCTIVE LABOR EARN LESS THAN THE AMOUNT REQUIRED TO PAY ALL COSTS OF THEIR INCARCERATION SHALL BE GRANTED EXTRA PRIVILEGES ACCORDING TO POLICIES AS MAY BE PROMULGATED BY THE COMMISSIONER OF CORRECTION; PROVIDING THAT SPECIAL CONSIDERATION MAY BE MADE SO THAT HANDICAPPED, DISABLED, OR ELDERLY INMATES MAY EARN GOOD TIME AND PAROLE ELIGIBILITY UNDER APPROPRIATE CIRCUMSTANCES; PROVIDING THAT THE COMMISSIONER OF CORRECTION SHALL MAKE ALL FACTUAL AND POLICY DECISIONS AS REQUIRED FOR THE GRANTING OF PAROLE OR GOOD TIME CREDITS, IN WHOLE OR IN PART, FOR HANDICAPPED, DISABLED, OR ELDERLY INMATES, WHICH SHALL STAND EXCEPT IN CASE OF POLICY DECISIONS SHOWN TO BE WITHOUT RATIONAL BASIS, OR IN THE CASE OF FACTUAL DETERMINATIONS SHOWN TO BE CLEARLY ERRONEOUS; PROVIDING THAT ALL ALTERNATIVE PUNISHMENT SHALL BE AT THE EXPENSE OF THE PERSON SENTENCED, SO THAT THE TAXPAYERS ARE NOT LIABLE FOR THE COSTS OF SUCH ALTERNATIVE PUNISHMENT; PROVIDING THAT ACC, AND ANY OTHER ENTITY ENTRUSTED WITH THE CUSTODY OF PRISONERS FOR PURPOSES OF EMPLOYMENT, SHALL MAINTAIN ADEQUATE PHYSICAL SECURITY TO PREVENT ESCAPES OR INJURY TO PRIVATE PERSONS OR PROPERTY; PROVIDING FURTHER THAT ALL SUCH ENTITIES SHALL POST BOND AND BE LIABLE FOR INTENTIONAL OR NEGLIGENT DAMAGES CAUSED BY INMATES IN THEIR CUSTODY, NOT TO EXCEED $100,000 PER PERSON PER INCIDENT, UNTIL JANUARY 1, 2003, AT WHICH TIME THE MAXIMUM LIABILITY PER PERSON PER INCIDENT SHALL INCREASE TO $1,000,000; PROVIDING THAT INMATES ENTRUSTED TO ACC OR OTHER AUTHORIZED ENTITY MAY BE EMPLOYED AT ANY SUITABLE EMPLOYMENT EXCEPT OPERATING PUBLIC RETAIL ESTABLISHMENTS, SCHOOLS, DAY CARE FACILITIES, HOSPITALS, OR SIMILAR FACILITIES IN WHICH THE PUBLIC'S INTEREST IN SAFETY AND SECURITY CANNOT BE REASONABLY PROTECTED; PROVIDING THAT INMATES ENTRUSTED TO ACC OR OTHER AUTHORIZED ENTITY MAY NOT MINGLE WITH THE GENERAL PUBLIC UNSUPERVISED; PROVIDING THAT SUFFICIENTLY PRODUCTIVE INMATES MAY BE PROVIDED WITH READJUSTMENT ACCOUNTS, FROM WHICH THE EXPENSES FOR THE HEALTH, EDUCATION, AND WELFARE OF THE PRISONER MAY BE PAID, THE REMAINDER OF WHICH SHALL BE USED FOR THE BENEFIT OF THE PRISONER UPON RELEASE, IN HIS OR HER TRANSITION TO FREE SOCIETY; PROVIDING THAT INMATES HELD FOR VIOLENT FELONIES SHALL NOT BE ELIGIBLE FOR EMPLOYMENT OUTSIDE PRISON BOUNDARIES UNLESS AND UNTIL THE COMMISSIONER OF CORRECTION DETERMINES THAT THE PRISONER HAS MADE SUBSTANTIAL CHANGES THAT MATERIALLY REDUCE THE RISK OF FURTHER VIOLENCE AGAINST PERSONS OR PRIVATE PROPERTY; EXCLUDING PRISONERS HELD UNDER SENTENCES OF LIFE WITHOUT PAROLE OR DEATH SENTENCES FROM ELIGIBILITY FOR EMPLOYMENT OFF PRISON PROPERTY UNDER ANY CIRCUMSTANCES; PROVIDING THAT ALL SAVINGS OF TAX MONIES FROM THE REDUCTION OF COSTS OF PRISON OPERATIONS SHALL BE USED FOR ROADS AND HIGHWAYS; PROVIDING THAT PRISONERS MAY BE USED DIRECTLY IN HIGHWAY CONSTRUCTION, AND THAT THE DEPARTMENT OF CORRECTION SHALL RECEIVE CREDIT FOR THE VALUE OF SUCH CONSTRUCTION IN THE CALCULATION OF ITS PROFITS AND LOSSES; GRANTING THE COMMISSIONER OF CORRECTION MAXIMUM FLEXIBILITY IN THE OPERATION AND STAFFING OF PRISONS; PROVIDING THAT THE ARKANSAS GENERAL ASSEMBLY SHALL NOT MAKE OR ENFORCE ANY LAW CONCERNING PRISON OPERATIONS, IF SAID LAW INCREASES THE COSTS OF THE ARKANSAS DEPARTMENT OF CORRECTION OR LIMITS OPPORTUNITIES TO ENHANCE THE REVENUE OF THE SYSTEM, UNLESS THE PROPONENT OF SAID STATE LAW PROVES THAT THE LAW OR REGULATION IS REASONABLY NECESSARY AND EFFECTIVE TO PROTECT A SUBSTANTIAL STATE INTEREST, AND THE OPPONENT OF SAID LAW OR REGULATION FAILS TO PROVE THAT AN ALTERNATIVE LESS COSTLY TO THE CITIZENRY WOULD REASONABLY PROTECT THE STATE'S INTEREST; AUTHORIZING THE COMMISSIONER OF CORRECTION TO CONTRACT FOR THE HOUSING OF PRISONERS FROM OTHER STATES, WHERE SUCH CONTRACTS REDUCE THE COSTS TO THE TAXPAYERS OF THE STATE OF ARKANSAS OR ENHANCE THE PROFITS OF THE ARKANSAS DEPARTMENT OF CORRECTION; PROVIDING FOR LIBERAL CONSTRUCTION IN FAVOR OF THE TAXPAYER, SEVERABILITY, AND GENERAL REPEALER OF CONFLICTING PROVISIONS; PROVIDING THAT THE AMENDMENT IS SELF EXECUTING AND SHALL TAKE EFFECT JANUARY 1, 2001, EXCEPT AS OTHERWISE PROVIDED; AND FOR OTHER PURPOSES.
The Attorney General is required, pursuant to A.C.A. § 7-9-107, to approve and certify the popular name and ballot title of all proposed initiative and referendum acts or amendments before the petitions are circulated for signature. The law provides that the Attorney General may substitute and certify a more suitable and correct popular name and ballot title, or if the proposed popular name and ballot title are sufficiently misleading, may reject the entire petition.
A.C.A. § 7-9-107 neither requires nor authorizes this office to make legal determinations concerning the merits of the act or amendment, or concerning the likelihood that it will accomplish its stated objective. Consequently, this review has been limited to a determination, pursuant to the guidelines that have been set forth by the Arkansas Supreme Court, discussed below, of whether the proposed popular name and ballot title accurately and impartially summarize the provisions of your proposed amendment.
The purpose of my review and certification is to ensure that the popular name and ballot title honestly, intelligibly, and fairly set forth the purpose of the proposed amendment. See Arkansas Women's Political Caucusv. Riviere, 282 Ark. 463, 466, 677 S.W.2d 846 (1984).
The popular name is primarily a useful legislative device. Pafford v.Hall, 217 Ark. 734, 233 S.W.2d 72 (1950). It need not contain detailed information or include exceptions that might be required of a ballot title, but it must not be misleading or give partisan coloring to the merit of the proposal. Chaney v. Bryant, 259 Ark. 294, 532 S.W.2d 741
(1976); Moore v. Hall, 229 Ark. 411, 316 S.W.2d 207 (1958). The popular name is to be considered together with the ballot title in determining the ballot title's sufficiency. Id.
The ballot title must include an impartial summary of the proposed amendment that will give the voter a fair understanding of the issues presented. Hoban v. Hall, 229 Ark. 416, 417, 316 S.W.2d 185 (1958); Beckerv. Riviere, 270 Ark. 219, 223, 226, 604 S.W.2d 555 (1980). According to the court, if information omitted from the ballot title is an "essential fact which would give the voter serious ground for reflection, it must be disclosed." Bailey v. McCuen, 318 Ark. 277, 285, 884 S.W.2d 938 (1994), citing Finn v. McCuen, 303 Ark. 418, 798 S.W.2d 34 (1990); Gaines v.McCuen, 296 Ark. 513, 758 S.W.2d 403 (1988); Hoban v. Hall, supra; andWalton v. McDonald, 192 Ark. 1155, 97 S.W.2d 81 (1936). At the same time, however, a ballot title must be brief and concise (see A.C.A. §7-9-107(b)); otherwise voters could run afoul of A.C.A. § 7-5-522's five minute limit in voting booths when other voters are waiting in line.Bailey v. McCuen, supra. The ballot title is not required to be perfect, nor is it reasonable to expect the title to cover or anticipate every possible legal argument the proposed measure might evoke. Plugge v.McCuen, 310 Ark. 654, 841 S.W.2d 139 (1992). The title, however, must be free from any misleading tendency, whether by amplification, omission, or fallacy; it must not be tinged with partisan coloring. Id. A ballot title must convey an intelligible idea of the scope and significance of a proposed change in the law. Christian Civic Action Committee v. McCuen,318 Ark. 241, 884 S.W.2d 605 (1994). It has been stated that the ballot title must be: 1) intelligible, 2) honest, and 3) impartial. Becker v.McCuen, 303 Ark. 482, 798 S.W.2d 71 (1990), citing Leigh v. Hall,232 Ark. 558, 339 S.W.2d 104 (1960).
Having analyzed your proposed amendment, as well as your proposed popular name and ballot title under the above precepts, it is my conclusion that I must reject both your proposed popular name and ballot title. There are a number of additions or changes to your popular name and ballot title which in my view are necessary in order to more fully and correctly summarize your proposal. I cannot however, at this time, fairly or completely summarize the effect of your proposed measure to the electorate in a popular name or ballot title without the resolution of several unresolved ambiguities in the text of your proposed amendment. I am therefore unable to substitute and certify a more suitable and correct ballot title under A.C.A. § 7-9-107(b).
In my judgment, your proposed popular name, the "PRISON REFORM AMENDMENT" is tinged with the type of partisan coloring that would lead the Arkansas Supreme Court to reject it. See, e.g., Crochet v. Priest, supra (words "video terminal games," as used in popular name and ballot title was tinged with partisan coloring); Arkansas Women's Political Caucus v.Riviere, 283 Ark. 463, 677 S.W.2d 846 (1984) (popular name "Unborn Child Amendment" was a prohibited catch-phrase or slogan that attempted to give partisan coloring to the merits of the proposal); Johnson v. Hall,Secretary of State, 229 Ark. 400, 316 S.W.2d 194 (1958) (popular name "An Amendment Prohibiting Operation of Trains with Unsafe and Inadequate Crews" rejected as partisan); Moore v. Hall, Secretary of State,229 Ark. 411, 316 S.W.2d 207 (1958) ("Freedom to Hire Amendment" rejected as partisan); Bradley v. Hall, Secretary of State, 220 Ark. 925,251 S.W.2d 470 (1952) (word "modern" in popular name "Modern Consumer Credit Amendment" lent partisan coloring to the merits of the proposal); andJackson v. Clark, 288 Ark. 192, 703 S.W.2d 454 (1986) (Attorney General was correct to substitute other words for "closed-door deal-making" and "influence-peddling" in popular name).
In my judgment, the popular name "PRISON REFORM" is a catch phrase or slogan calculated to lend partisan coloring to the merits of your proposal. This follows from the fact that the term "reform," in ordinary usage, means "to make better." The partisan coloring seems clear.
While I am empowered to substitute a more suitable and correct popular name for your measure (A.C.A. § 7-9-107(b)), I may also reject it, along with the entire ballot title and petition, stating my reasons therefor, and instruct you to redesign the proposed measure, ballot title and popular name in a manner that would not be misleading. Because I find that I must also reject your ballot title, I have chosen to exercise this option under A.C.A. § 7-9-107(c).
With regard to your proposed ballot title, a number of ambiguities arising from the text of your proposal prevent my substitution of a more suitable and correct title. Such ambiguities include, but are not necessarily limited to, the following:
 1) An initial question arises with respect to the "Arkansas Correction Corporation," referenced in Sections 3, 6, 10, 11, 12 and 13 of your proposed amendment. I believe an ambiguity exists as to the identity of this entity. Is this an existing Arkansas Corporation? Have articles of incorporation been filed with the Secretary of State's office? A court would undoubtedly view this information as essential, given the nature and extent of this corporation's powers. This question must be clarified in your measure and ballot title.
 2) An ambiguity also exists, in my judgment, as follows regarding the operations and exact role or scope of authority of the "Arkansas Correction Corporation:"
 (a) Section 3 of your proposed amendment authorizes the "employment" of prisoners "to be conducted by" the Arkansas Department of Correction and the Arkansas Correction Corporation. But the proposed amendment, in Sections 3, 6, 10, and 11, also suggests that "housing" will be provided by the Arkansas Correction Corporation, and that the prisoners will be in the "custody" of the Corporation. I am unable to determine the location of such housing and who will make this determination. These questions must be addresssed.
 (b) Sections 10 and 11 refer to the Arkansas Correction Corporation as an "entity entrusted with the custody of prisoners." It is unclear, however, exactly how the Corporation is so entrusted. Is the Arkansas Department of Correction involved in this process? If so, how? Or is the Arkansas Correction Corporation automatically entrusted with the custody of prisoners it employs? Is the Department of Correction involved in any manner in the employment of prisoners as conducted by the Arkansas Correction Corporation? Who decides which prisoners are "suitably qualified" and "employable"? (Section 3).
 (c) Section 14 of your proposed amendment states that the Commissioner of Correction "shall make all rules and regulations" for the purpose of minimizing the cost of incarceration, maximizing rehabilitation, etc. This is the only reference to the Commissioner's rule-making authority. Does the Commissioner have any regulatory authority with respect to the Arkansas Correction Corporation? Section 6 states that the Commissioner of Correction shall have approval authority with respect to" the terms and conditions for the earning of good time," but it is unclear whether this extends to the prisoners' contract with Arkansas Correction Corporation to work outside prison grounds.
In my judgment, a ballot title that fails to include the above information would likely be viewed as misleading on these points. I cannot, however, resolve these ambiguities. These points must be clarified and included in your ballot title.
My office does not concern itself with the merits of proposed measures, nor do I have any constitutional role in the shaping or drafting of initiative or referendum measures. I am not your counsel in this matter and cannot advise you as to the substance of your proposal. At the same time, however, the Arkansas Supreme Court, through its decisions, has placed a practical duty on the Attorney General, in exercising his statutory duty, to include language in a ballot title about the effects of a proposed measure on current law. See, e.g., Finn v. McCuen,303 Ark. 418, 793 S.W.2d 34 (1990). Where the effects of a proposed measure on current law are unclear or ambiguous, however, it is impossible for me to perform my statutory duty to the satisfaction of the Arkansas Supreme Court without clarification of the ambiguities.
My statutory duty, under these circumstances, is to reject your proposed ballot title, stating my reasons therefor, and to instruct you to "redesign" the proposed measure, and ballot title and popular name. See
A.C.A. § 7-9-107(c). You may, after clarification of the issues discussed above, resubmit your proposed amendment, along with a new proposed popular name and ballot title, at your convenience. I anticipate, as noted above, that some changes or additions to your submitted ballot title may be necessary. I will be pleased to perform my statutory duties in this regard in a timely manner after resubmission.
Sincerely,
MARK PRYOR Attorney General